## Case No. 6,124.

### HARRIS et al. v. LINDSAY.

### [4 Wash. C. C. 271.] [1]

### Circuit Court, E. D. Pennsylvania. April Term, 1822.

#### PARTNERSHIP—ARTICLES OF AGREEMENT—LIABILITY FOR DEBTS.

1. Partners, in respect to debts contracted by them during their association, cannot by any agreement between themselves, at the period of their separation, change their condition of principal debtors, or in any way affect the rights of their creditors. If the agreement be that one of them shall retain the partnership effects and pay the debts, they continue nevertheless bound as principals; so that no indulgence granted by a creditor to the paying partner, which falls short of an agreement express or implied to take him as the debtor and to discharge the other partner, can place them in the situation of principal and surety, so as to discharge the retiring partner.

[Cited in Re Johnson, Case No. 7,369; Re Hurst. Id. 6,925. Quoted in Re Parker, 11 Fed. 399.]

[Cited in First Nat. Bank v. Newton [Colo. Sup.] 14 Pac. 433; Robinson v. McFaul, 19 Mo. 549; Rawson v. Taylor, 30 Ohio St. 402; Wildes v. Fessenden, 45 Mass. [4 Metc.] 25; Hoskinson v. Eliot, 62 Pa. St. 399; Hard v. Burton, 62 Vt. 322, 20 Atl. 269.]

2. But it is not meant to concede that where two persons are indebted by simple contract, and the note of one for the amount of the debt is taken by the creditor, it is in all cases necessary to the discharge of the other to prove an express agreement to accept the note in satisfaction. The agreement may be inferred from the nature and operation of the new contract, or from circumstances clearly indicating that such was the intention of the parties.

This was a motion for a new trial. [See Case No. 6,123.]

Mr. Sergeant, for plaintiffs [Harris & Donaldson], insisted that partners being, as to debts contracted by them, principal debtors, they can by no act or agreement between themselves change their situation to that of principal and surety, without the express assent of the creditors: their liability is unconditional; neither of them can be discharged from his obligation but by payment or release, nor can any act of the creditor amount to a release which he did not clearly so intend; and this intention ought, in this case,

to have been left to the jury. Forbearance, or giving time to the partner, who, upon a dissolution, is to keep the funds and pay the debts, will not discharge the retiring partner. Neither will a note or bill of exchange accepted by the creditor from the paying partner for the amount of the partnership debt, amount to a discharge of it. The cases from 4 Esp. 89, 5 Esp. 122, and 2 Starkie, 178, which seemed principally to weigh with the court upon the trial of this cause, have been reviewed in the case of Bedford v. Deakin, 2 Barn. & Ald. 210; from which it appears that those cases proceeded on the ground that the notes were received in satisfaction of the partnership debt, which is not the present case; for the stipulation that the notes are to be a payment when they should be paid, is equivalent to a reservation strictly of the plaintiff's original right against both partners.

Mr. Binney, for defendant, admitted most of the general principles laid down by the plaintiffs' counsel. But he contended, that where partners dissolve their connexion, and agree that one of them shall retain the funds and pay the debts, if a creditor, knowing of this agreement, enters into a new arrangement with the paying partner, without regarding his original rights, but agreeing to be paid by that partner, he adopts him as his debtor, and substitutes the new for the old contract. As between themselves, the effect of the agreement between Lindsay and Tomlinson was to make the former surety, and the latter principal. Mont. Partn. 204. This was not binding upon the plaintiff unless he chose to treat them as principal and surety, which he did by the new arrangement with Tomlinson, knowing at the time, as he did, of the agreement between the partners. The question is not always, has the debt been paid or released? It may be, has he agreed to take something in satisfaction of it? A negotiable note taken from the paying partner, without a reservation of the original rights of the creditor, is a satisfaction. Thacher v. Dinsmore, 5 Mass. 299; Wiseman v. Lyman, 7 Mass. 286; Chapman v. Durant, 10 Mass. 47. Such too is the doctrine in 4 Esp. 89, 5 Esp. 122, and 2 Starkie, 178, and such too is the case of Bedford v. Deakin, although it was read and relied upon to prove a contrary doctrine. This is a stronger case than any that has been cited, in as much that in this the debt of the co-partnership was by the new arrangement made by the plaintiffs with Tomlinson, mixed up and confounded with other debts due by Tomlinson; the notes of Tomlinson accepted for the aggregate amount; and a receipt given by the plaintiffs, to credit Tomlinson with the notes when they should be paid.

WASHINGTON, Circuit Justice. This case comes before the court upon a rule to show cause why a new trial should not be granted,

------

[1] [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]

upon the ground of a misdirection of the court in the charge to the jury. The material facts of the case may be stated in a few words. Lindsay and Tomlinson, carrying on trade under that name. having had dealings with the plaintiffs, dissolved their partnership early in the year 1816, being indebted to the plaintiffs in a balance of $2,691. It was agreed between them that Tomlinson should retain the partnership effects, and pay all the debts of the concern, and should also pay certain sums of money to Lindsay. Immediately after this transaction, Tomlinson formed a new co-partnership with some other person, under the firm of J. Tomlinson & Co.; and on the 22d of January, 1816, they addressed a letter to the plaintiffs, containing an order for goods, in which they say, "We have bought out Lindsay on Wednesday last. The firm is now J. Tomlinson & Co. We are answerable for what we are indebted to you." This last connection was soon dissolved, being indebted to the plaintiffs in a balance of about $546. In April, 1816, Tomlinson and Chambers formed a co-partnership, which they soon afterwards dissolved, being also indebted to the plaintiffs in the sum of about $3,018. On the 22d of October, 1816, Tomlinson and the plaintiffs entered into an arrangement, by which it was agreed that the above balances due from the three firms should be consolidated, and divided into three parts, for which Tomlinson should give his three negotiable notes to the plaintiffs, payable at forty, ninety, and one hundred and twenty days. This was accordingly done, and the plaintiffs gave to Tomlinson a receipt for the notes, in which it was expressed, that when the said notes should be paid, the plaintiffs would pass the same to the credit of Tomlinson. Neither of the notes was for the balance due by either of the firms. The court charged the jury, at the trial, that by the above arrangement the plaintiffs agreed to take Tomlinson as their debtor for the balance due by Tomlinson and Lindsay, and thereby discharged Lindsay. We unhesitatingly admit that partners, in respect to debts contracted by them during their association, cannot, by any agreement between themselves, at the period of their separation, change their condition of principal debtors, or in any way affect the rights of their creditors. If the agreement be, that one of them shall retain the partnership effects, and pay the debts, they continue nevertheless bound as principals, so that no indulgence granted by a creditor to the paying partner, which falls short of an agreement, express or implied, to take him as the debtor, and to discharge the other partner, can place them in the situation of principal and surety, so as to discharge the retiring partner. To support a defence of this kind, such an agreement must be satisfactorily made out. It is the very point upon which all the cases that were cited at the bar turned. We further agree, that a note, or bill of exchange, given for a pre-ex-

isting simple contract debt, does not extinguish it; and that, per se, it affords no ground for presuming an agreement between the parties, that it was given and received in satisfaction of such debt. There are some cases of high authority which seem contrary to this position. 5 Mass. 299; 6 Mass. 343; 7 Mass 288; 10 Mass. 47. But the weight of authority is, in our opinion, the other way. 1 Strange, 426; 1 Burrows, 9; 3 East, 258; Sheehy v. Mandeville, 6 Cranch [10 U. S.] 253. But in making these admissions, we do not mean to concede that where two persons are indebted by simple contract, and the note of one for the amount of the debt is taken by the creditor, it is in all cases necessary to the discharge of the other to prove an express agreement to accept the note in satisfaction of the original debt. The agreement may be inferred from the nature and operation of the new contract, or from circumstances, clearly indicating that such was the intention of the parties.

It was strongly insisted by the plaintiffs' counsel, that the question in this case turned altogether upon the intention of the parties to the new contract, to be discovered from the circumstances which attended it; and that the court ought to have left that matter to the jury, as the basis on which their verdict should be founded. We admit, that if the agreement to take the notes in discharge of the original debt be a mere inference from circumstances, tending to show that such was the intention of the parties, the jury were the proper judges of such intention, and ought to have decided that point. But the ground upon which the charge proceeded was, that the new contract amounted to an agreement to discharge Lindsay; and that the intention of the parties formed no part of the question which the jury had to decide. There were, in fact, no circumstances in the case, other than such as grew out of written documents, the construction and legal effect of which, was proper for the consideration and decision of the court. In the case of Johnson v. Weed, 9 Johns. 310, the note of a third person was taken for goods sold. and a receipt in full was given by the vendor. The court left it to the jury, under all the circumstances of the case, to say whether there was a special agreement by the vendor to receive the note absolutely as payment. But a receipt in full is never conclusive evidence of payment, and is open to inquiry. Much less was it conclusive that the note was received as payment of the original debt; and whether it was so intended or not, was a question properly submitted to the jury. In the case of Herring v. Sanger, 3 Johns. Cas. 71, it was decided, that a note given by one partner after a dissolution of the co-partnership, for a debt due by the partners, and a receipt for the note when paid to be in full of the debt, was no payment of the precedent debt; not on the ground of intention, but of the fair import of the contract. And in Evans v. Drum-

mond, 4 Esp. 89, the court decided that, by taking a new bill from the paying partner, the partnership debt was discharged, without reference to the intention of the parties. We therefore take the rule to be, as it is before laid down, that where the discharge of the precedent debt depends upon the nature and operation of the new contract, the question is properly within the province of the court to decide.

The only question then, in this case is, whether the arrangement entered into between the plaintiffs and Tomlinson on the 22d of October, 1816, amounted to an agreement to take Tomlinson as the debtor, and to discharge Lindsay? It has been freely admitted by the defendant's counsel, that the plaintiffs were not bound by the agreement made between Tomlinson and Lindsay, at the time when they dissolved their co-partnership. And it is not denied, nor could it be on the other side, that the plaintiffs were at full liberty to confirm that agreement, so far as to affect their own interest. Have they not done so? With full knowledge of that agreement, they consented, not only to take the notes of Tomlinson for the amount of the precedent debt, and to credit him for the same when they should be paid; but that the character of the precedent debt should be totally changed, and its identity destroyed, by mixing it up with other debts with which Lindsay had no concern. And, as if to render this confusion of debts still more confused, the aggregate amount of three distinct debts was so divided, and the evidence of them so contrived, that neither of the parts answered to either of the precedent debts, and neither of the original debtors could say, at any time, prior to the entire payment of all the notes, when he was discharged, in part or in whole. Lindsay was not consulted in relation to this new arrangement; and although he had made provision for the payment of the debt for which he was liable. the parties to the new contract placed it beyond his power to find out when that debt was discharged; and although, if sued for the same, he could have proved payments made by Tomlinson out of the very effects left with him for that purpose; still, as, by the new contract, the plaintiffs were not bound to credit this debt with any payments which might be made to them, he could not have avoided the demand by any evidence short of that which should prove a discharge of all the notes. Tomlinson incapacitated himself to apply the payments he might make to either of the precedent debts. The application was made by the contract; the credit was to be given to Tomlinson alone, the original debtors being placed totally out of view. If Tomlinson had paid a sum equal to the whole of the debt due by Lindsay and Tomlinson, and directed the same to be applied to the discharge of that debt, the plaintiffs might have refused, and answered, that they knew only Tomlinson in the transaction, to whom alone they were bound by their contract with him, to credit the payments he might make. If the effect of the agreement was not to substitute Tomlinson as the debtor, in the place of Lindsay and Tomlinson, the payments which Tomlinson might make on account of the debt due by Lindsay and Tomlinson, ought to have gone to their credit. But if he was taken as the debtor, he alone was entitled to the credit, and then there is a perfect consistency between the two parts of the agreement.

It was strongly insisted by the plaintiffs' counsel, that nothing short of an express agreement to that effect could discharge Lindsay from his original liability; and there are certain loose, general expressions, to this extent, to be met with in some of the cases. But those expressions should be construed with reference to the particular case in which they were used. In Murray v. Gouverneur, 2 Johns. Cas. 438, and in some others where we meet with this language, there was nothing which even implied an agreement that the note or bill should be taken in satisfaction of the precedent debt; and it has been already stated, that the mere acceptance of a note or bill, is not, per se, a discharge of a precedent simple contract debt. In Herring v. Sanger, 3 Johns. Cas. 71, before adverted to, the receipt stated that the note, when paid, was to be in full of the debt due from the partners; the plain import of which was, that in the event of the note being paid, and not otherwise, it was to go to the credit, not of the maker of the note, as in this case, but of the original debt, which was considered as still existing, and in full force. The terms of the receipt were tantamount to an express reservation of the rights of the creditor against both the partners. In the case of Evans v. Drummond, 4 Esp. 89, there was no agreement of any kind that the bill should be taken in satisfaction of the original debt. The mere circumstance of the creditor taking the bill of the paying partner, after he knew that the other partner had nothing to do with the concern, was considered as amounting to a discharge of that other partner. Such too was the case of Reed v. White, 5 Esp. 122. The case of Bedford v. Deakin, 2 Barn. & Ald. 210, was much relied upon by the plaintiffs' counsel; not only as destructive of the nisi prius cases above referred to, but as laying down principles opposed to those on which the opinion of this court was founded. We think quite otherwise. That case was shortly as follows. Deakin. Bickley and Hickman, being partners in trade, drew the bill of exchange upon which the action was brought by Bedford, as indorsee. The bill was duly protested, after which the partnership was dissolved. Bickley, through the medium of a friend, informed the plaintiff of the dissolution, and that by an arrangement made

between the partners, he, Bickley, was to provide for this bill. He then offered the plaintiff his own notes for the principal and interest then due, payable at four, eight, and twelve months, with an indorser, whom he named. Upon receiving notice of this arrangement and offer, the plaintiff observed that he held very good security already, and did not wish to prejudice it. He agreed, however, to receive the notes of Bickley, reserving strictly the security of the three partners. The notes were accordingly delivered; but the protested bill was nevertheless retained by the plaintiff. The notes, when they became due, were taken up by the plaintiff. Hickman and Bickley became bankrupts, the former, prior to the date of the above notes, and the latter two or three years afterwards. The reasons assigned by all the judges, why Deakin, the solvent partner, was liable to pay the original bill, notwithstanding the arrangement made between the partners, and the securities afterwards received by the plaintiff from Bickley was, that the plaintiff never agreed to receive Bickley as his debtor, and to discharge the other partners; but on the contrary, he, in express, terms, reserved, strictly, the security of the three partners; and as an additional proof that the other partners were not intended to be discharged, he retained in his possession the evidence of his claim against them. Abbot, C. J., in delivering his opinion, relies altogether upon the express reservation of the original security of all the partners; and after stating this reservation in italics, he observes, "it cannot therefore be said that the plaintiff agreed to take Bickley's notes as a satisfaction of his claim on the original bills." In answer to the argument founded on the renewal of the notes by Bickley, he relies upon the circumstance, that the plaintiff retained the possession of the original bill of exchange, in consequence of which, Deakin was bound to take notice of the renewal of the notes by Bickley, and that he, Deakin, remained still liable. Mr. J. Bayley observes, that the notes given by Bickley could not amount to a satisfaction of the original debt, unless when they were taken, they were so intended by the plaintiff, "or unless the plaintiff's conduct has, without the fault of Deakin, produced mischief to him." To show that the first branch of the proposition had not occurred, he relies on the express reservation by the plaintiff, of his original security; and as to the last, that the evidence of that security had never been delivered up, and therefore Deakin could not be injured by supposing that it was paid, or that something had been accepted in satisfaction of it. The other judge rests his opinion upon a general principle of law which no person can dispute, and upon the express reservation. Now the difference between that case and the present exists in the following particulars. In that, the cred-

itor reserved, in express terms, his claim against all the partners; he reserved it by the strongest implication, in retaining the evidence of that claim; and the other partners could not, without their own default, be injured by the acts of the plaintiff, since they were bound to take notice that the renewed note was not accepted in satisfaction of the claim against them. There was then no agreement, express or implied, to discharge the other partners. In this case, there was no reservation of the plaintiffs' claim against the partner who had retired; on the contrary, there was an express agreement to credit Tomlinson with the notes given by him, when they should be paid. There was no implied reservation of the plaintiffs' claim against Lindsay, by retaining the evidence of it, since there was no evidence of it which could have been surrendered to Tomlinson; and lastly, the amalgamation of this debt with others due by Tomlinson, in such a manner as to destroy its identity, and to deprive Lindsay of the means of knowing whether it was due or not, and when and how it was discharged, partially or wholly, produced a total change in his original situation, and exposed him to all the injury which such an arrangement could not fail to subject him to. Where then was the notice to Lindsay that the original debt was still unsatisfied, which is so much relied upon in the case of Bedford v. Deakin? He certainly would never obtain it from a view of the new contract; every part of which was calculated to beguile him into the belief, that it was discharged by the negotiable notes of Tomlinson. The rule for a new trial must be discharged.