GEORGE WILDES & others *vs.* CHARLES B. FESSENDEN & others.

A, of London, gave a letter of credit to B. & C., of Boston, who thereupon drew bills on A., which he accepted and paid : B. had other accounts with A., in which C. had no concern : C. had funds in the hands of B., and requested B. to remit to A. and close the account of B. & C. : B. afterwards made a remittance to A. and advised him, by letter, of other forthcoming remittances, and requested him to apply the sum, which was actually remitted, to B.'s account generally, and place the bills which A. had accepted and paid for B. & C. to B.'s debit : This letter was shown to C. before it was forwarded to A. : A. replied, that he had received B.'s letter, and "noted the contents" : This letter was also shown to C. : Before this letter was received, B. failed, being largely indebted to C.; and in about seventy days after the letter was written, A. suspended payment, not having, in his correspondence, again alluded to B.'s request to debit him with the bills accepted and paid for B. & C. : About four and a half months after said letter was written, A. forwarded his account against B. & C. and it was put in suit. *Held*, that A. had not, by the terms of his letter to B., agreed to discharge C. and look for payment to B. alone; that there was no consideration for such agreement, if it had been made ; and that A. was entitled to recover of B. & C.

THIS was an action of assumpsit, in which the plaintiffs declared generally for a balance of account for money paid for the defendants.

At the time when the transactions took place out of which this suit arose, the plaintiffs were bankers in London, doing a heavy American business ; and three of the defendants, Fessenden, Thompson & Co. were merchants and partners in Boston, and John Skinner, the other defendant, a merchant in Charlestown. Fessenden, Thompson & Co. were defaulted, and the defence was made by Skinner.

The facts, on which the parties submitted the case to the court, were these : In September 1836, S. Austin, jr., the plaintiffs' agent in Boston, furnished the said Fessenden, Thompson & Co. and the said John Skinner, with a letter of credit, by which Messrs. W. & J. Thomas & Co. of St. Johns, Newfoundland, were authorized to draw on the plaintiffs, for account of Fessenden, Thompson & Co. and J. Skinner, to the amount of £1600. This credit was intended by the defendants to be used in the purchase of a cargo for the joint account of said Fessenden, Thompson & Co. and Skinner, and

the firm of Lombard & Whitmore. Bills to the amount of £1350 were drawn, in October 1836, by said Thomas & Co., by virtue of said credit, upon the plaintiffs, and were accepted by them in November; were paid at maturity in January 1837; and were charged to the defendants, who were all duly notified, by letters of advice, of their acceptance.

In February 1837, Lombard & Whitmore settled with Fessenden, Thompson & Co. for their interest in the debt created by these bills, and paid them their proportion, with the understanding that it should be assumed and paid by Fessenden, Thompson & Co. But no information thereof was given to the plaintiffs, who had no knowledge of Lombard & Whitmore's interest in the voyage. At this time Fessenden, Thompson & Co. were indebted to Skinner in about $14,000; in part, for moneys deposited with them, to be drawn for as he might have occasion; and in part, for proceeds of goods sold by them for his account.

On the 8th of February 1837, which was immediately after the settlement with Lombard & Whitmore, Fessenden, Thompson & Co. purchased a bill of exchange on London for £1000, which they remitted to the plaintiffs. Prior to the time of this remittance of £1000, Skinner had several times urged Fessenden, Thompson & Co. to remit, and close the account in which he was interested; and they had agreed to do so; and when they remitted the £1000, they informed Skinner that they had remitted it for that account; and to satisfy him that they had complied with his request, they told him what bill they had bought for the purpose, and showed him the letter written to the plaintiffs covering this remittance; and at the time when the remittance was made by them, one of the firm informed Austin, the plaintiffs' agent who gave the letter of credit, that they were then remitting to meet those bills; but Austin did not inform the plaintiffs of this. The letter to the plaintiffs, which enclosed the remittance, is as follows:

" Boston, February 8th, 1837. Messrs. Geo. Wildes & Co. London. Gentlemen — We last had the pleasure, 17th December, enclosing bill on Paris for 10,000 francs, and informing

you that we should ship you 68 bales mohair.   We have since concluded not to do so, and now have the pleasure of enclosing John Gliddens's bill on Baring, Brothers & Co., Liverpool, for £ 1000 sterling, indorsed by Means & Clark and by us, to your order, which please collect to our credit.   Messrs. Grant, Balfour & Co., Genoa, and Messrs. Grant, Brothers, Trieste, will make you a further remittance for our account.   Capt. Benj S. Tufts of brig Angola has remitted you from Pernambuco about £ 400 for our account.   The remittances of £ 63. 3. 2. made you by Brothers Cramer, account J. Hall, J. Curtis and ourselves, should one third be placed to our credit.   The bills drawn by W. & J. Thomas & Co. for £ 1350 account John Skinner and ourselves, *you will place to our debit*.   Respectfully, Fessenden, Thompson & Co."

On the 9th of February, the plaintiffs wrote to the defendants as follows :

" London, February 9th, 1837.   Mr. John Skinner, Messrs. Fessenden, Thompson & Co. Boston.   Gentlemen — Herewith you have your account current made up with interest to the 31st December last, terminating in a balance of £ 1362. 12. 2. in our favor, to which make your books conform, if you find same free of error, and advise us accordingly.   We are very truly your obedient servants.   Geo. Wildes & Co."

The letter of Fessenden, Thompson & Co. of February 8th, was received by the plaintiffs on the 16th of March 1837, and was answered by them, on the 18th of March, as follows :

" London, 18th March, 1837.   Messrs. Fessenden, Thompson & Co. Boston.   Gentlemen — We have received your favor of the 8th ultimo, *and noted its contents*.   You remit us a bill for £ 1000 on Messrs. Baring, Brothers & Co., and Messrs. H. Foster & Co. remit us, by their letter of 18th January, a bill of £ 308. 0. 6. on ourselves at sixty days' sight, due on 18th May, which will be collected to the credit of your account.   We are very truly your obedient servants.   Geo. Wildes & Co."

On the 17th April 1837, Fessenden, Thompson & Co. failed in business, being largely indebted to Skinner, and have

since continued insolvent. The letter of the plaintiffs, of March 18th, was received by Fessenden, Thompson & Co. on or about the 22d of April 1837, four or five days after their failure.

At the time when the bills, the amount of which is now demanded in this suit, became due, Fessenden, Thompson & Co were indebted to the plaintiffs in a balance of about £2200, on account of other transactions, (to which Skinner was no party,) exclusive of these bills ; but the plaintiffs held a large amount of property belonging to them, the proceeds of which they were entitled to and did apply towards the payment of this balance, as far as it would go. The bill for £1000 was received and collected, and passed to the credit of Fessenden, Thompson & Co. Of the other funds mentioned in their letter of February 8th, the sum of £120 9 11 was afterwards remitted by Fessenden, Thompson & Co. to the plaintiffs, who also received the £308 0 6 remitted by H. Foster & Co., which sums were credited to Fessenden, Thompson & Co., as also £300 from New York. These remittances, with the avails of property in their hands, reduced the balance against Fessenden, Thompson & Co., on the 11th of June 1837, (when the accounts were made up,) to £421 6 9, leaving the balance, due on the bills accepted for accounts of J. Skinner, Fessenden, Thompson & Co., of £1579 4 10.

The plaintiffs suspended payment on the 3d of June 1837, and went into liquidation. They had no further correspondence with the defendants, or either of them, on the subject of this suit, until August 1837, when they forwarded their account for payment, never having debited the said bills, on their books, to Fessenden, Thompson & Co., according to the request made by the latter in their letter of February 8th.

*Dexter*, for the plaintiffs.

*C. G. Loring & Dehon*, for Skinner.

HUBBARD, J. This cause has been very ably and elaborately argued by the counsel on both sides, as well upon the construction of the letters of the parties, as upon the authorities supposed to bear upon the case.

The procuring of the letter of credit by all the defendants, and the acceptance and payment of the bills by the plaintiffs, are facts both admitted and proved ; and the plaintiffs must prevail against all the defendants, unless Skinner can satisfactorily show that he has been exonerated and discharged. It is not pretended that the plaintiffs were made acquainted with the interest which Lombard & Whitmore had in the cargo purchased by the bills in question, or that they knew the pecuniary relations subsisting between Skinner and Fessenden, Thompson & Co. All the facts made known to them are contained in the correspondence of Fessenden, Thompson & Co. with them ; the material part of which, as bearing on this controversy, appears to have been very short. Indeed, it seems to have been confined to the letter of February 8th 1837, and the answer of March 18th 1837. And on the construction of these two letters, the decision of the case mainly or wholly depends.

In has been suggested by the plaintiffs' counsel, that the last clause in the letter of Fessenden, Thompson & Co. of February 8th, namely, " the bills drawn by W. & J. Thomas & Co. for £ 1350 account John Skinner and ourselves, you will place to our debit," simply means, " you will charge them to the account of John Skinner and Fessenden, Thompson & Co." ; and that there was no intention on the part of Fessenden, Thompson & Co., by that phrase, to vary the existing relations of the parties with each other ; or, if there was, that the intention was so ambiguously and equivocally expressed, that the plaintiffs would easily misunderstand it. But in relation to the first supposition, it may be replied, that the letters of the plaintiffs of November 1836, acknowledging the acceptance of the bills, and which were directed as well to Skinner as to Fessenden, Thompson & Co., informed them to whose account they would be placed ; and as to the other intimation, that it was so ambiguously or equivocally expressed that the plaintiffs would misunderstand it, it may be said, that the whole correspondence is loose, and implies very little of art in its construction. We think it is clear, that the request of Fessenden, Thompson & Co. was, that the bills should be placed to their

account, and that so far as the plaintiffs were concerned, Skinner should not be looked to by them, but only Fessenden, Thompson & Co., and that this request was clearly enough ex pressed to show what their intention was.

This construction, if it needed further support, is strengthened by the conduct of Fessenden, Thompson & Co. at home ; by the desire of Skinner, repeated several times to them, to have this account closed, and their agreeing with him so to do ; and by their showing the letter of February 8th to him, and stating to him that they had remitted to the plaintiffs £ 1000 for their account. What Fessenden, Thompson & Co.'s expectations were, in respect to the plaintiffs agreeing to their request, is another thing, and is unimportant as it regards the construction of their letter.

The next question of importance is, did the plaintiffs agree to this request ? This rests on the construction of the first clause in their letter of March 18th 1837 : "We have received your favor of the 8th inst., and noted its contents." These words, the defendants contend, are an agreement on the part of the plaintiffs to charge the bills in question to Fessenden, Thompson & Co., and to discharge Skinner. The construction given to the words, by the defendants' counsel, is this : "We notice your request to charge the bills drawn on us by W. & J. Thomas & Co. to your sole account, and to discharge Mr. Skinner. You have remitted us, by your letter, £1000, and promise further remittances from sources pointed out by you. We are willing, therefore, to agree to your proposal, and so you may settle with Mr. Skinner as you please, and we will hold you accountable for the bills." And the counsel insist that this is the obvious meaning of the words, and that Fessenden, Thompson & Co. might rightfully give that meaning to them. This construction the counsel attempt to fortify by the fact, that afterwards the plaintiffs did not address any letters to Skinner and Fessenden, Thompson & Co., and that they did not write at all on the subject, till after the lapse of four and a half months. The plaintiffs' counsel, on the other hand, contends that these words are merely words of course, used by mer

2 *

chants after acknowleding the receipt of a letter, and import neither acquiescence nor refusal, but merely say, " we notice what you write us ; " and that in themselves they constitute no promise, but need some act done, or omitted to be done, to give them vitality.

We are not aware that the phrase *noted its contents*, or *note its contents*, have ever been the subject of judicial decision, so as to have acquired a meaning in the minds of the community, like the clauses in a policy of insurance, or the language in respect to bills of exchange.  As the commerce of the world has extended, and the correspondence of merchants has been more and more enlarged and diversified, they have felt the necessity of abbreviating their communications, till at length they have almost a technical vocabulary of their own, not always very significant to the uninitiated, but yet sufficiently expressive of their general meaning.  The terms *note* or *noted its contents* are used apparently in the first place as an acknowledgment of having perused the letter of their correspondent, and that the communications of the letter are understood and considered.  The words are in their nature distributive, and are to be applied to the several subjects of the letter about to be answered.  And in relation to the duties growing out of these several subjects, they may, and often do, imply obligations ; but we do not think they necessarily, *ex proprio vigore*, import a promise which may be enforced at law.  And it may perhaps be generally said, that where these words imply obligations, such obligations would exist by force of the law merchant, without the use of the words. For example ; a letter is sent which encloses a bill of exchange for acceptance, a bill of lading of goods shipped to the port of the correspondent, and an order for insurance ; and the party receiving the letter acknowledges it, and says he notes the contents, and says nothing further, but merely that the bill of exchange and the bill of lading were enclosed.  He is bound to present the bill of exchange for acceptance, and receive the goods on the bill of lading, and to effect the insurance ; but these duties would have resulted without the use of the phrase "note the contents," and could be enforced by showing that

the letter had been received. On the other hand ; suppose the letter, among other things, had contained a request for liberty to draw on the house for some certain sum, to be paid for by future remittances, and the correspondent in reply should acknowledge the receipt of the letter, and say he had noted its contents. Would that be such an engagement to honor bills drawn on the strength of it, that third persons could safely take them on the ground that the words constituted a promise to accept the bills, which the law would enforce as equivalent to an actual promise to accept ? We incline to think that the words do not contain such a direct promise to accept, as would of themselves bind the party to pay bills drawn on the strength of it. They are so far equivocal, that to one mind they might import a promise, and by another they might be deemed a polite but short mode of declining the request. The brevity of merchants' letters often creates an obscurity which a sentence or two would wholly avoid. We are therefore brought back unaided, to consider what the parties did mean by their use of the terms " we have received your favor of the 8th ultimo and noted its contents." This reply is short and hastily written ; but still we may believe that the writers took into their consideration the request of Messrs. Fessenden, Thompson & Co., and understood its meaning ; and admitting that they did, then the most favorable interpretation for the defendants, that we can give to the words "noted its contents " is this : " We notice your wish that we should place the bills drawn on account of John Skinner and yourselves to your separate debit, and we are willing to do it as you desire." We say that this may be the true meaning, from the fact that they were called upon to answer the inquiries or request of their correspondents, with sufficient distinctness to enable them to act upon such answer ; and from the consideration, that the words used by them do not in themselves import a negative. But admitting, in the present instance only, that such is the meaning to be given to the phrase used, still we think it does not contain any direct determination to release Skinner at all events ; but that it presents one of those cases where the intention of the parties cannot be ascertained without looking at

their subsequent conduct, to explain and give a legal construction to their previous language. But before doing this, it may be well to examine shortly some of the authorities brought to our notice by the counsel on each side.

The plaintiffs rely on the position, that a simple agreement, on the part of a creditor, to discharge one of a number of partners, or one of a number of joint creditors, is a mere *nudum pactum*, and cannot avail the party pleading it ; that some new security must be given, or there must be such a course of dealings between the parties, as will afford legal evidence, to be submitted to a jury, that the claim has been discharged.

In the case of *Lodge v. Dicas & Rondeau,* 3 Barn. & Ald. 611, the two defendants were in partnership at the time the debt to the plaintiffs was contracted ; they subsequently dissolved, and it was agreed that Rondeau should receive the partnership debts and discharge the plaintiffs' demands. Rondeau wrote to the plaintiffs, " we have been arranging our accounts, and Mr. Dicas and myself have agreed that I should take the amount of your account on myself, which I will be responsible for to you." Upon receiving this letter, the plaintiffs expressly agreed to exonerate Dicas from all liability as to the partnership account, and stated that they should charge it to Rondeau's private account ; he having continued to employ them as his agents. Abbott, C. J. in delivering the opinion of the court, says, " even if it had been distinctly proved in this case, that the plaintiffs were acquainted with the fact that Rondeau, by virtue of the arrangement between him and the defendant, Dicas, was to receive the debts due to the partnership and take upon himself the payment of this demand, I should still have had great doubts whether the plaintiffs had released Dicas ; but in the absence of that proof, I am clearly of opinion that there is no defence to the present action." Referring to Rondeau's letter, he says, " that, however, was clearly not sufficient to show them the nature and terms of such arrangement ; and unless that knowledge be brought home to them, there can be no doubt whatever in the present case." *David v. Ellice,* 5 Barn. & Cres. 196, came before the same court, and the note of that

case is as follows : " A. B. & C. were in partnership in trade : A. retired from the firm, and notice of that fact was given to D. a creditor of the firm, and that B. & C. continued the business, and assumed the funds and charged themselves with the debts of the partnership. The balance due to D. was transferred to his credit by the new firm, and D. was informed of this transfer and assented to it. He afterwards drew upon the new firm for a part of this balance, and they accepted and paid his bills. The new firm having become insolvent, it was held that C. continued liable for the debt due to D. from the old firm." In that case, the court say no new person, not originally a debtor, had consented to become so, and there was no evidence of prejudice to Ellice on the presumption that he had left funds in the hands of his former partners, which he would otherwise have withdrawn ; and in the absence of such proof, the court were clearly of opinion that he was not discharged. *S. C. 7 Dowl. &* Ryl. 690.

In *Gough* v. *Davies*, 4 Price, 200, the note is thus : " A person depositing money with bankers, and taking their accountable receipts, does not, by continuing to leave his money in the bank after a dissolution of the original firm, and the constitution of a new one which consists of some of the members of the old bank and of other persons, discharge the former partners who have gone out, although he receives interest regularly from the new firm, gives them no notice, and continues to transact business with them in the common course, and that for a period of four years, and until they become insolvent." In that case, the court say, " there is therefore no evidence to show that Gough adopted the new firm. What more has he done than to say, ' I am perfectly willing to take your security for the new debt, but I do not release the old firm, I keep their accountable receipts,' " &c. If the new partnership had given him notice to produce the old receipts, he would have been nonsuited.

In the case of *Smith* v. *Rogers*, 17 Johns. 340, the defendants were indebted to the plaintiffs for goods sold, and shortly after they dissolved partnership, and a few days after, (April 22d,) Bement, one of the defendants, wrote to the plaintiffs say-

ing, " our firm was dissolved on the third instant, and I assumed your demand, which you may rest assured will be paid as soon as possible." On the 27th of April, the plaintiffs answered, " we observe your partnership is dissolved, and that you have assumed our debt, which we are satisfied with." On the 19th of July, Bement again wrote to the plaintiffs : " I enclose you $ 100, which you will please place to the credit of the late firm of R. & B. ; " and on the 13th of August following, Bement gave his note to the plaintiffs who gave him a receipt · " Rec'd Aug. 13th, 1816, from C. M. Bement his note on demand with interest for $ 600, when paid to be placed to the credit of Rogers & Bement's account with us ; also $ 2,86 for balance of said account." On the 21st of December 1816, the plaintiffs received $ 100 from Bement, in part payment of the above balance. And Bement continued to do business till November 1837, when he became insolvent. No suit was brought against him to compel the payment of the note given by him to the plaintiffs, nor was Rogers called on, by the plaintiffs, for the payment of the original debt, till after the insolvency of Bement. The court held that the letter of the plaintiffs, of April 27th, in which they acknowledge notice that the partnership was dissolved and that Bement had assumed their debt, with which they were satisfied, could not be considered as a discharge of Rogers & Bement ; that the subsequent payment of $ 100 contradicted such a construction ; and they also held, that neither the acceptance of the note of Bement by the plaintiffs, nor the indulgence shown to him, amounted to a payment, or discharged Rogers ; but that the plaintiffs were entitled to recover the balance due for the original debt, on delivering up the note to be cancelled.

These cases, if admitted as fully declaring the law, seem decisive of the case at bar. But the defendants in reply contend that the cases of *Lodge* v. *Dicas & Rondeau*, and *David* v. *Ellice*, are much shaken by the opinion of the court in the case of *Thompson* v. *Percival*, 5 Barn. & Adolph. 925, upon which case the defendants rely. That case was as follows : James & Charles Percival, the defendants, had been partners, and the

chief part of the goods, for which the action was brought, had been delivered to them before they dissolved their partnership, and the residue before the plaintiffs had knowledge that it was dissolved. On the dissolution, effects were left in James's hands (who continued the business) sufficient to pay the partnership debts. Shortly after the dissolution, the plaintiffs' collector applied for the balance due him, to James Percival, who told him that Charles knew nothing of these transactions, and that the plaintiffs must look to him alone. The plaintiffs afterwards drew a bill on James, at three months, for the mixed amount, which was accepted and afterwards dishonored, and the plaintiffs gave him time to pay, but afterwards brought this action against both defendants. A verdict was taken for the full amount, with leave to move for a nonsuit, if the court should be of opinion that the plaintiffs had discharged Charles P. from the debt. Lord Denman, in delivering the opinion of the court said, " it appeared that the facts proved raised a question for the jury, whether it was agreed between the plaintiffs and James that the former should accept the latter as their sole debtor, and should take the bill of exchange accepted by him alone, by way of satisfaction for the debt due from both. If it was so agreed, we think that the agreement and receipt of the bill would be a good answer on the part of Charles P. to this demand, by way of accord and satisfaction. It cannot be doubted but that if a chattel of any kind had been, by the agreement of the plaintiffs and both the defendants, given and accepted in satisfaction of the debt, it would have been a good discharge. It is not required that the chattel should be of equal value ; for the party receiving it is always taken to be the best judge of that in matters of uncertain value. Nor can it be questioned but that the bill of exchange of third persons, given and accepted in satisfaction of the debt, would be a good discharge." In answer to the suggestion that the acceptance of a bill of exchange by one of two debtors cannot be a good satisfaction, because the creditor gets nothing which he had not before, it is replied that " the written security, which was negotiable and transferable, is of itself something different from that which he had before ; and many cases may be

conceived, in which the sole liability of one of two debtors may be more beneficial than the joint liability of two, either in respect of the solvency of the parties, or the convenience of the remedy," &c. "If, therefore," said Lord Denman, "the plaintiffs in this case did expressly agree to take, and did take, the separate bill of exchange of James, in satisfaction of the joint debt, we are of opinion that their so doing amounted to a discharge of Charles." The case, the court say, is distinguished from that of *Lodge* v. *Dicas.* In that case, "no new negotiable security was given ; nor did the difference between the joint liability of the two and the separate liability of one of them appear to have been brought under the consideration of the court. In the case of *David* v. *Ellice*, no bill of exchange was given, and that decision is not altogether satisfactory to us. We cannot but think there was abundant evidence of the payment of the old debt by the old firm, to the plaintiff, and a new loan to the new firm, which might have been as well effected by a transfer of account by mutual consent as by actual payment of money."

That case of *Thompson* v. *Percival*, differs from the case at bar in this essential feature — that a new negotiable security was taken of one of the parties, and after its dishonor, time was given him ; and in that it resembles the cases of *Evans* v. *Drummond*, 4 Esp. R. 89, and *Reed* v. *White*, 5 Esp. R. 122, and the Massachusetts cases where, *primâ facie*, a negotiable note is held to be payment.

The defendants have also cited the case of *Hart* v. *Alexander*, 2 Mees. & Welsb. 484, as not only shaking the authority of *Lodge* v. *Dicas* and *David* v. *Ellice*, but as proving that a discharge may be inferred by the course of trade, where no separate security has been given. But in that case, the retired partner had been withdrawn for ten years before the failure of the other partners, who had also taken in others ; and it was submitted to the jury to decide whether, with the knowledge of the fact that the defendant had retired from the partnership, and the plaintiff's consenting to take the remaining partners as his debtors and making new contracts with them, he did not dis-

charge the defendant. The jury found for him ; and the court, after argument, confirmed the verdict.

It is certain that these authorities affect the cases of *Lodge* v. *Dicas* and *David* v. *Ellice*, on which the plaintiffs rely. But the difficulty on the part of the defendant, Skinner, is, to bring his facts within the range of the cases cited for him. That of *Thompson* v. *Percival* proceeds on the ground of an accord and satisfaction ; and that of *Hart* v. *Alexander* on a long course of dealing and new contracts, not only with the other, but also with the new partners, knowing the defendant had retired ; while in the case before us, no accord and satisfaction took place, and there were no continued dealings between these parties.

The defendants have also referred us to the cases of *Sheehy* v. *Mandeville*, 6 Cranch, 264, and *Harris* v. *Lindsay*, 4 Wash. C. C. 271 ; in the latter of which the court say that partners cannot, by any agreement between them, affect the rights of their creditors ; but that where the creditor, with a full knowledge of such agreement, entered into a totally new contract with the paying partner, entirely changing the nature of the partnership debt and making it a different debt from that which the retiring partner was bound to pay, and subjecting him to a different kind of responsibility, the defendant Lindsay was discharged and it amounted to an acceptance of the other partner, Tomlinson, as the debtor ; the propriety of which decision we do not draw into question.

And it is to be observed that neither of the cases, which are cited by the defendants, dispenses with a consideration. On the contrary, they proceed on the ground of a consideration satisfactory to the party receiving it, whether the same be of greater or less value ; and in the cases of substitution, they are either of a new and more available security, or of a new debtor in place of the old. But in the present case, there was neither the substitution of a new debtor nor of other and different security.

Without taking further time in the examination of the various

authorities cited, we are brought to a consideration of the other questions raised in this case.

The counsel of Skinner, in support of his defence, assume two positions. *First,* that there was an appropriation of remittances towards the payment of this debt. *Second,* that the silence of the plaintiffs, from the time of their writing in March, to August, is sufficient evidence of their acquiescence in the proposed discharge of Skinner.

The argument that there was an appropriation, in part payment of the bills in question, rests principally, if not wholly, upon the fact that Lombard & Whitmore paid their share of the interest in said bills, immediately prior to the remittance of the bill for £1000 ; and that Fessenden, Thompson & Co. informed Skinner that they had remitted it for that account, and also informed the plaintiffs' agent, Austin, that they were remitting to meet those bills. This may have been the intention of Fessenden, Thompson & Co. But the question is not merely what was their intention, or their declarations on this side of the water ; but whether they communicated such intention to the plaintiffs. If they did, it must be found in the letter of February 8th. I am at a loss to understand how, from that letter, the bill of £1000 could be considered by the plaintiffs as a special appropriation to pay, as far as it would go, the bills of £1350. The remittances were to be passed to the credit of Fessenden, Thompson & Co. generally ; and the plaintiffs were requested to place the bills to their debit. An appropriation can only be made where there are different accounts between the parties, or where the party is indebted on account, and on a bond or note ; and to make a payment an appropriation, there must be a specific direction to which account, or to which bond or note, to apply it. Otherwise, the payment is on account generally, and the right of appropriation rests with the creditors ; and if not exercised, it is usually applied to the extinguishment of that portion of the account which is prior in time. Now Fessenden, Thompson & Co. did not direct this £1000 to be applied to the extinguishment of the £1350, as far as it would go. If it had been so directed, the language

would have been very different.   It would have been " £ 1000
herein remitted is on account of the bills drawn by W. & J.
Thomas & Co. for account of J. Skinner and ourselves, and
the balance of that account we wish to have passed to our
debit ; " or such an expression of their intention, that the plain-
tiffs could not reasonably mistake it.   It is said, indeed, that
the direction of the payer need not be in express terms, but
may be inferred from circumstances.   But surely from this let-
ter no such direction could be probably inferred ; and the de-
fendants, in relying upon it, obtain but a poor support.   Again,
it is said the payment must be applied consistently with the
intent of the payer ; and for this is cited *Bonaffe* v. *Woodberry*,
12 Pick. 463.   It is there said by Putnam J. that the payer or
donor has a right to appropriate the money which he advances.
" If the former paid with one intent, and the receiver accepted
with another, the intent of the payer shall prevail."   This is
true ; but the intent must be made known, at the time of pay-
ment, to the party receiving it.   A secret intent cannot prevail
in such a case.   But it is said that when the £ 1000 was re-
mitted, Fessenden, Thompson & Co. informed Austin, the
agent of the plaintiffs, that they were then remitting to meet
those bills drawn by virtue of his letter of credit, but that Austin
did not inform the plaintiffs thereof ; to which it may be answer-
ed, that Austin was under no obligation, from any thing that
appears as to the nature of his agency, to communicate such
verbal intelligence ; and especially, that the plaintiffs would learn
it more naturally from the defendants themselves.   But it is
urged that they did remit, on settling with Lombard & Whit-
more, and that Skinner asked them to remit, and that in conse-
quence of these facts, Fessenden, Thompson & Co. were
mere agents of these parties, and if they omitted to state the
agency, on remitting the money, it does not make any difference
as to their rights ; so that one third of this money must be con-
sidered as Lombard & Whitmore's money, and the same as if
the plaintiffs had collected it of Lombard & Whitmore them-
selves.   To this it may be satisfactorily replied, that Lombard
& Whitmore were never the debtors of the plaintiffs, in relation

to this transaction, either jointly with the present defendants, or in any other way ; but they were debtors to Skinner and Fessenden, Thompson & Co., or to the latter, whichever furnished them with the funds ; and the payment by them to Fessenden, Thompson & Co. was wholly independent of the plaintiffs ; a transaction with which they had nothing to do, and by which they could not be affected. And as to Skinner, there is no evidence of his having paid any money to Fessenden, Thompson & Co. on this particular account. And if he had, it could not, surely, prejudice the plaintiffs, without special notice to them, and their assent to it.

The further position of the defendants is, that the silence of the plaintiffs, from the time of their writing, in March, to the middle of the following August, is sufficient evidence of their acquiescence in the proposed discharge of Skinner, and is in fact a ratification of the request to transfer the account, upon which Fessenden, Thompson & Co. and Skinner might safely act : As where a merchant forwards to his correspondent his account balanced, and no acknowledgment is made respecting it, lapse of time will be evidence to bind the party receiving it, and to hold him accountable for the balance : And so Skinner, presuming on such acquiescence, might have settled his share of the bills with Fessenden, Thompson & Co., with perfect safety to himself. But in the present case, the lapse of time is not in itself sufficient to bind the party ; for on the 1st of June the plaintiffs suspended payment and went into liquidation. Besides ; the silence on the other side is not to be overlooked. On the 9th of February, the plaintiffs stated their account with Messrs. John Skinner & Fessenden, Thompson & Co. as of December 31, 1836, in which the bills are charged to them with the commission for accepting and paying, and they are credited with a rebate of interest, as the bills were not payable till some time in January ; and this account was regularly forwarded. Yet neither Skinner, nor Fessenden, Thompson & Co. took any notice of it ; they neither acknowledged it, nor renewed the request to carry the amount to the account of Fessenden, Thompson & Co., nor intimated that the £ 1000 was remitted

on that account.    But giving no weight to this fact, as unfavorable to the defendants, we think there was no laches on the part of the plaintiffs, nor such silence as binds them to the admission of Skinner's discharge.

Without extending these observations further, it may be remarked upon the facts before us, that the plaintiffs have obtained no advantage by the proposal of Fessenden, Thompson & Co. to place the bill to their credit ; nor does it appear that Fessenden, Thompson & Co. charged Skinner, on their books, with his proportion of the bills, at the time they remitted £1000 ; nor that Skinner gave them any credit for a remittance, on his account ; nor that any change whatever took place in their accounts, in consequence of the letters being shown to him. Indeed it does not appear that the cargo, which it is said was purchased with the bills, went into the hands of Fessenden, Thompson & Co. exclusively, and that Skinner did not receive his full share of it.    But be that as it may, it does not affect this opinion.    The facts do not prove that Skinner has sustained any loss in consequence of the letter written to the plaintiffs of the 8th of February ; and clearly not after the plaintiffs' answer was received ; till which time the plaintiffs could not be affected by any negotiations of Skinner & Fessenden, Thompson & Co. as between themselves, because prior to the time of receiving that letter, Fessenden, Thompson & Co. had failed, and the relations of the parties were fixed by that event. Without therefore relying with too much confidence on the construction given to the letter of March 18th, it appears to us that no appropriation was in fact made by Fessenden, Thompson & Co. of the bill of £1000, or of any other specific amount, towards the payment of the bills of £1350 ; that the payments actually made by Fessenden, Thompson & Co. must, agreeably to the law merchant, be applied to the extinguishment of prior debts ; that no change of credit took place on the books of either party ; that no new credit was given ; that no bill of exchange was drawn on Fessenden, Thompson & Co. by the plaintiffs, as evidence of an accord and satisfaction of the old debit ; and that no consideration was in fact paid or promised for the proposed

3 *

release of Skinner.   So that whatever were the intentions of the parties, those intentions have not been carried into effect in such manner as to change the legal relations of the parties.   We do not therefore perceive that any sufficient and substantial grounds exist why Skinner should be discharged from a .debt fairly incurred by him jointly with Fessenden, Thompson & Co., not merely as surety, but for funds to furnish a cargo in which he was beneficially interested ; and in accordance with this opinion, the defendant, Skinner, must be called, and judgment entered for the plaintiffs.