Johnson, J.
The note sued on was the joint liability of all the partners in the firm of Taylor, Griswold & Co.
Taylor and Eingei', as well as Griswold, were principal debtors.
When the note was executed and delivered to Mrs. Raw-son, for a valuable consideration, the liability thereon of each partner became fixed. Their relations to that contract, and their liabilities thereon, could by no act between themselves be changed.
After this note was given, two of the partners, Taylor and Finger, retired from the firm, and a new one was formed, including Griswold, their former partner, which obligated itself to the retiring partners to pay all debts, and save them harmless.
Of this arrangement, it is claimed that Mrs. Rawson had notice. The evidence tends to show constructive notice to her of the formation of the new partnership to succeed Taylor, Griswold & Co., and subsequent dealings by her with the new firm. Whether she ever in fact knew of this arrangement, by which the new firm was to pay the debts of the old, does not appear, but, conceding that she did, the question presented by the charge of the court is, as to the effect of such knowledge on her rights on the note.
The charge was.: “ If she did have notice, then she was, *400 after that knowledge, bound to treat them as sureties, and they were entitled to all the protection that sureties would be entitled to, as if the names of Taylor and Finger had been attached as sureties when the note was executed.”
It is not claimed that Mrs. Rawson assented to this new arrangement, or by any valid contract, express or implied, agreed to modify or change the relations of these joint obligors to her upon the note, but simply, as between themselves, by the new arrangement, Taylor and Finger became sureties of their copartner, Griswold, of which fact Mrs. Rawson had notice. It is admitted that so long as she was not informed of this arrangement her rights and duties remained as fixed when the note was given ; but it is claimed that when such notice was given, then Taylor and Finger were entitled to the same rights and protection as if they had been originally sureties.
In substance, the charge of the coui’t lays down the law to be, that the liability of principals on an obligation may be converted into a liability of suretyship by the acts of the obligors, without the assent of the obligee, by giving notice of such new arrangement.
In Thurston & Hays v. Ludwig, 6 Ohio St. 1, it was held that in order to change or vary the terms of a written contract, there must be a new contract to that effect between the parties, based on some new consideration, or such new contract must have been so far executed or acted upon that a refusal to carry it out would operate as a fraud.
Such is the general rule governing all contracts. In its application to cases like the one at bar, Story says: “It frequently happens that upon the retirement of one partner, the remaining'partners undertake to pay the debts and to secure the credits of the firm. This is a mere matter of private arrangement and agreement between the partners, and can in no respect be admitted to vary the rights of existing creditors of the firm.” Story on Partnership, sec.
If the creditor assents to such arrangement after it becomes known to him, “ and by his subsequent act or conduct, or binding contract, he agrees to consider the remain *401 ing partners as his exclusive debtors,_ he may lose all right and claim against the retiring partner.”
The precise question at bar was considered at great length in Maingay v. Lewis, Irish R. Com. Law, 495 (1869).
To an action on the money counts, the defendant pleaded that the cause of action accrued against’ him and one W, and one S. as partners; that afterward the firm was dissolved by a memorandum, of which plaintiff had flue notice, by which W. agreed to pay all'debts of the firm and indemnify his copartners from all claims, by which he became a surety only, of which plaintiff: had notice, and after such notice took a bill of exchange at three months from W. alone for the amount, and thereby gave time to W., ■whereby defendant was discharged from liability. It was held that this plea was bad, and did not constitute a defense either at law or in equity, Whiteside, C. J., saying: “ It is clear that no arrangement among joint debtors could prejudice the rights of their creditors.” Again : “ Another averment is that the plaintiffs ‘had notice of this arrangement/ Well, I do not see how the men giving notice to the plaintiff of an arrangement by which they can not be affected, is to prejudice their rights.”
In that opinion the distinction is clearly drawn between a case where the relation of principal and surety existed inter se at the time the obligation was entered into, of which the creditor had knowledge, and a ease of joint principals-inter se at the date of the obligation, and a subsequent agreement between the joint debtors, by which, as between themselves, one becomes a surety of the other, of -which subsequent arrangement, the creditor had knowledge.
It is of the first importance to keep in mind the distinction, as it furnishes the key to harmonize many apparently-conflicting decisions. In the former class of cases, the relation of suretyship exists at the very inception of the contract. The obligee having knowledge of that relation before he accepts the contract, takes it subject to all the-rights and equities of such sureties inter se not inconsistent-with the terms of the contract.
*402 On the other hand,, where the obligors are in fact joint debtors, he accepts them as such, and no subsequent arrangement between the joint debtors alone can change that relation. Bedford v. Deakin, 2 B. & Ald. 210; Evans v. Drummond, 4 Esp. 89 ; Pooley v. Harradine, 7 E. & B. 431; Butler et al. v. Berkey, 13 Ohio St. 523; Parsons on Part. 421-425, ch. 13; Manley v. Boycott, 75 E. C. L. 45.
We may concede that/ such an agreement between remaining and retiring partners, with notice to a partnership creditor, would impose upon him the duty of acting in good faith and with reasonable diligence in the management of securities placed in his hands for the payment of his claim, in the preservation of liens, and in the application of payments made.
A failure by the creditor, after such notice, to perform these duties, resulting in damages to the retiring partner, might well be regarded in a court of equity as cause to release him.
In such case the terms of the contract have not been changed, but the fact that new relations had arisen between the partners, by which one assumes, as between them, the burdens of all, might well call upon the creditor to act in such way as not to injure the retiring partners. Eq. Lead. Cases, pt. 11, p. 1902.
In such cases it has been held, that if the creditor should give up securities in his hands, and take those of the new firm, or give long credit for additional interest or new security, or release a levy made, without the consent of the retiring partner, then in all such cases the retiring partner will be discharged. Story on Part., sec. 158 et seq.; Parsons on Part. 421 et seq.; Colyer on Part. 554-570; Harris v. Lindsay, 4 Wash. C. C. 271; Bedford v. Deakin, 2 Barn. & Ald. 210.
An examination of the cases in support of the doctrine ■of the text-books fails to support the charge of the court below. Upon both reason and authority, therefore, we •conclude that as Mrs. Rawson was not a party to this new ■contract between the partners, by which the new firm as *403 sumed the debts of the old, and had never assented thereto or agreed to be bound thereby, her rights on the promissory note, to regard all as principals, have not been altered or impaired.
These principles are aptly illustrated by the case before us.
By the several mortgages the claim of Mrs. Rawson was amply provided for.
Dudley, as the agent of the mortgagees, had sold sufficient property to pay them in full, and held the money, the proceeds of such property, applicable to such payment. So much of this money as equalled the claim of Mrs. Rawson belonged to her. Had she, without the consent of these retiring partners, and with full knowledge of her rights, surroridered it back to E. R. <3-, & Co., after notice that they were the principal debtors, and thus have thrown the burden on these defendants, equity might well treat them as discharged.
In this case, it is not clear that Mrs. Rawson had full knowledge of all the facts, and it is clear that Taylor and Finger consented to the surrender of the money then in Dudley’s bauds. Had it been distributed, the debt would have been satisfied. The reason why it was not so applied by Dudley is disclosed in the bill of exceptions.
E. R. Griswold & Co. had succeeded in compromising with their general creditors, and had obtained their consent to a return to the firm of the unsold goods then in the hands of Wyman, the assignee.
They also desired to get possession of the money in the hands of. Dudley.. To do this, they must have the assent of all the mortgagees who were entitled to receive their proportions of that fund. Taylor and Finger were among the mortgagees whose assent was necessary.
To secure such assent, a paper was drawn up and signed by all the parties interested in the funds. Taylor and Finger assented. They are first to sign this paper, thereby recommending the others to do the same. Mrs. Rawson, seeing their names to it, was influenced to sign among the *404 last. Taylor and Finger took good care, however, to insist on a private arrangement, in fraud of the rights of the' other creditors, by which they received their share of these moneys, unknown to Mrs. Rawson.
We think the court erred in saying that their signatures-to this paper operated only as to their individual interest in. the fund.
The avowed object of this paper was “ to promote a settlement of the affairs and business of the firm of E. R., Gris-wold & Co.”
All had to sign to make the scheme operative. The object was to reinstate the embarrassed firm in business.
It may be that if part only had signed, the trustee might-have paid the others their share, and returned back to E. R. G. & Co. the shares of the assenting parties, yet it is-quite evident that the paper, which all in fact signed, was an express assent of each ; that Dudley wTas authorized to-return to the firm, not only his own share of the money,, but also the shares of the other mortgagees. In short, Taylor and Finger assented to this arrangement as an entirety. They consented that Dudley should, instead of paying the-debt to Mrs. Rawson, return the money to E. R. Griswold & Co., to enable them to resum-e business.
Taylor and Finger, by signing this paper, consented, not only that their share of the money should be returned to E. R. G. & Co., but also consented that Mrs. Rawson should do the same. They said to her : We are willing, in order to promote a settlement by our principals, and enable them to start again in business, that you shall still hold our note unpaid, and return to them the money in Dudley’s hands applicable to its payment. In Woodcock v. Oxford, and Worcester Railway Co., 1 Drew, 521, D. and S. were sureties of A., B., and C. A. and B. retired, and F. was substituted. Subsequently, disputes arose between the new firm of C. & F. and the company with which the old firm had contracted, on which contract D. & 8. were the sureties.
The-sureties were not parties to the transactions growing, out of these disputes, but acted as the solicitors of the new *405 ■firm, and prepared many of the documents by which the original contract was varied. It was held that the sureties were not discharged by reason of these changes, because, with full knowledge of the facts, they assisted as solicitors in carrying into effect the arrangements of which they complain. These defendants, having signed this paper, thereby ■consented and recommended that all the other mortgagees do the same. This consent bars their present defense.
III. It is also claimed by the defendant that the receipt of interest on the 15th of November, 1867, to the 17th of the same month was such a giving of time as discharged ■the defendants.
The authorities cited and the conclusions reached on the first point disposes of this.
As these defendants were still jointly liable on the note as partners, the mere payment of interest by one jointly liable with them, for a time in advance, would not discharge them, even if we concede that such payment, by operation ■of law, extended the time on the note.
Judgment of common pleas reversed and cause remanded.