RICHARD S. NORMAN ET AL. *v.* JACKSON FERTILIZER COMPANY.

1. SURETY.   *Principals cannot change into.*

> One of several principal debtors cannot, by agreement among themselves, without consent of the creditor, be changed from a principal to a surety, so that he will be released by acts or omissions which release a surety.

2. PARTNERSHIP.   *Retiring partner.   Others assuming liabilities.*

> An agreement between partners that one of them shall retire from the co-partnership, and that those remaining will assume and discharge the partnership liabilities, unless consented to by the creditor, does not release the retiring partner from liability, nor change his liability from a principal into that of a surety.

FROM the circuit court of Copiah county.

HON. ROBERT POWELL, Judge.

The Jackson Fertilizer Company, appellee, was the plaintiff in the court below; Norman and Long, appellants, were defendants there. The facts are stated in the opinion of the court. Earnes and Dale, mentioned in the opinion (the partners who assumed the debts of the co-partnership), were not sued, having been discharged as bankrupts.

*R. N. Miller* and *R. B. Mayes,* for appellants.

The questions presented by the record are as follows:

1. Did Norman and Long, by dissolution of the firm of Earnes, Long & Co., and retirement from it, become to appellee, with notice, mere sureties on the debt? In other words, by retiring from the firm of Earnes, Long & Co., did they remain as to appellee jointly liable as principals, or was their relation altered so as to require of appellee, with notice of the retirement, that it treat them as sureties and protect their rights as sureties?

2. If they became sureties as to creditors, with notice of retirement, and entitled to protection as such in dealings between the creditor and remaining members of the firm after dissolution, were they released by the extension of the note and other valuable agreements proven, and were these extensions and releases upon considerations valuable in law?

A retiring partner remains liable for the debts of the firm made while a member, but only until the creditor, by express agreement, or conduct which amounts to an implied agreement, has released him. In other words, no mere private agreement between the partners themselves can affect the rights of the creditor or his duties without notice of the retirement. But it is well-settled law that the retiring partner may be released by an implied agreement on the part of the creditor, and that only slight circumstances are necessary to raise the implication of an agreement to release. And it is equally well settled that almost anything of value will amount to the necessary consideration to support such an agreement. In Parsons on Partnership (3d ed.), 457, *et seq.,* this question is discussed at length. The consideration may be some business advantage, as well as money. He says: "In almost all cases where the creditor agrees to this there is some reason for it which serves as a consideration. Either the retiring partner gives up something because of the assent of the creditor (to his release), or the creditor gains something in time, or in business, or in some other way."

It has been held that the consideration of such agreements cannot be inquired into. *Lyph* v. *Ault,* 7 Exc., 67; Fox Digest on Partnership, 305 *et seq.; Rolf* v. *Flour Salting,* 3 Moore's Privy Council, A. S., 383; 1 Lindley on Pat. Star, p. 242; Colyer on Part., sec. 568; *Benson* v. *Hadfield,* 4 Hare; 30 Eng. Chan., 39; *Patterson* v. *Camden,* 25 Mo., 13.

The law is well settled that, upon retirement from a firm by one, the creditor having notice of the same, and the assumption of the debts by the remaining partner, that, with or without the consent of the creditor, and even against his protest, the relation of the retiring partner to the debt is at once changed as to such creditor into that of mere surety for the remaining partner, and that the creditor is bound, both in law and in equity, in his dealings with the remaining partner, to protect the rights of such retiring partner as a surety. And that an extension of the debt upon consideration and the tying of the hands of the creditor will release the retiring partner as surety, as in the case of another surety. In support of this proposition see the authorities following: *Evans* v. *Drummond,* 4 Cl. & F., 207; 10 Bligh, 548; 7 Car & Payne, 746; 2 Mees. & W., 484; *Oakley* v. *Pashler,* 10 Bligh, 590; *West* v. *Chastine,* 12 Ala., 315; *Relf* v. *Flower Salting Co.,* 3 Privy Coun. (Moore), 383; 3 Denis, 512; *Benson* v. *Hadfield,* 30 Eng. Chan., 39; 4 Hare; Fox Digest Partnership, 304, *et seq.; Wilde* v. *Jenkins,* 4 Paige, 481; Brandt on Surety & Guaranty, sec. 23 and note; *Millerd* v. *Thorne,* 56 N. Y., 402; *Savage* v. *Putnam,* 32 N. Y., 1501; *Moore* v. *Grayson,* 64 N. Y., 264; 1st Sanford Chan. Report, 370; *Campbell* v. *Floyd,* 153 Penn. St., 84; *Wilson* v. *Boyd,* 75 Ind., 286; *Gales* v. *Hughes,* 44 Wis., 332; *Johnson* v.*Young et al.,* 20 W. Va., 614; 2 Williams (Vt.), 93; *Colgrove* v. *Tallman,* 67 N. Y., 95; *Smith* v. *Sheldon,* 35 Mich., 42.

In this last case cited Judge Cooley's reasoning is conclusive that, upon retirement and assumption of debt by the remaining partner, with notice to the creditor that the remaining partner at once stands in the relation of a surety to the debt, and is entitled

to be so treated and protected by the creditor in his dealings with the remaining firm.'

*Green & Green,* for appellees.

On authority, and on reason and elementary principles, we affirm that Norman and Long did not become sureties. In *Harris* v. *Lindsay,* 4 Wash. C. C. (Pa., 1822), 273, Mr. Justice Washington said: "We unhesitatingly admit that partners in respect to debts contracted by them during their association, cannot by any agreement between themselves, at the period of their separation, change their condition of principal debtors, or in any way affect the rights of their creditors. If the agreement be that one of them shall retain the partnership effects and pay the debts, they continue nevertheless bound as principals, so that no indulgence granted by a creditor to the paying partner, which falls short of an agreement, expressed or implied, to take him as the debtor and to discharge the other partner, can place them in the situation of principal and surety, so as to discharge the retiring partner." In *Bank* v. *Chaney,* 114 Ala. (1896), 546, Judge Haralson said: "But such an agreement between the partners themselves, to which the creditor of the firm is not a party, has no effect on him. The firm, and each member thereof, are bound to him jointly and severally, which no arrangement between themselves touching a dissolution can effect or absolve without his consent." *Titus* v. *Todd,* 25 N. J. Eq. (1875), 458; *Collier* v. *Leech,* 25 Pa. St. (1875), 404.

In *Sevire* v. *Redman,* 1 Q. B. (1876), 542, Mr. Chief Justice Cockburn thus forcibly puts our contention: "The contention is that the two, Redman and Holt, had a right, without the knowledge or consent of the plaintiff, to create a new state of things, and then, by giving notice, to prevent the plaintiffs from doing what they lawfully might before have done, to create a new right in themselves, which, if observed, must derogate from the plaintiffs' right, and then to say that it is inequitable in the plaintiffs to act in derogation of this right so created. Surely

the inequity begins early, and is in the defendant's derogation from the plaintiffs' right without their consent." *Garmer* v. *Boyer,* 34 W. Va., 303; *Rawson* v. *Taylor,* 30 Ohio St., 389.

The foundation stone of the decisions *contra* is *Oakley* v. *Pasheller,* 4 Cl. & F., 207, but on inspection it will be observed that this case holds no such doctrine as that two debtors can by an agreement between themselves change the nature and abridge the rights of their joint contract. This decision was severely criticized in *Maingay* v. *Lewis,* Irish Rep., 3 C. L., 229.

When the question again rose in England in *Sevire* v. *Redman,* 1 Q. B. D., 542, doctrine was examined and the conclusion reached in exact accord with our contention.

*Smith* v. *Sheldon,* 36 Mich., 48, fails to differentiate between the rights of the partner *inter sese* and *quoad* the creditors.

*Hall* v. *Johnson,* 6 Texas Civ. App., 110, maintains the *contra* doctrine, but we would be willing to rest our case on the masterly dissenting opinion of the chief justice. But on this question reaching the supreme court, the decision was unquestionably in our favor. *Hardware Co.* v. *Weeks,* 90 Texas, 110.

The rule in Mississippi in *Swan* v. *Smith,* 57 Miss., 553, Mr. Justice Chalmers said: "From the date of the arbitration, and by virtue thereof, the relation of principal and surety existed between the parties as to the firm debts which each obligated himself to pay in exoneration of the other. As to the Swan & Watson debts, Swan became primarily and Smith secondarily liable *inter sese.* While the creditors were in no manner bound by the agreement, and a court of law would take no notice of it, a court of equity will respect and enforce it, and will regard Smith in paying off these judgments in the light of a surety who has discharged a burden resting primarily in his principal." *Virden* v. *Murphy,* 78 Miss., 521, states our contention in regard to the discharging of a party by novation, and in this aspect is controlling.

TERRAL, J., delivered the opinion of the court.

In 1898, Earnes, Dale, Norman, and Long were commercial partners under the firm name of Earnes, Long & Co. On the 4th of May, 1898, said firm executed its note for $1,551.25, payable to Jackson Fertilizer Company on the 1st of December, 1898. In January, 1899, said firm was dissolved by consent, and by Norman and Long selling their interest to Earnes and Dale, who continued business under the style of Earnes & Dale, and who received all the assets and assumed all the liabilities of the old firm of Earnes, Long & Co. In 1900 Earnes & Dale were adjudicated bankrupts, and thereafter, this note not being paid, the appellee sued Norman and Long thereon, and had judgment by peremptory instruction in its behalf. Norman and Long pleaded the general issue, and gave notice that upon the trial they would prove payment, the dissolution of the firm of Earnes, Long & Co., the formation of the partnership of Earnes & Dale, and of the assumption by it, for valuable consideration, of the payment of this note of said dissolved firm, and of all their other obligations; that Earnes & Dale continued to deal with appellee, and contracted debts due to it; that appellee knew of the dissolution of Earnes, Long & Co., and knew of the conditions thereof, and acquiesced therein; that appellee, for valuable consideration, extended the payment of the note here sued on one year beyond its maturity, and thereby discharged defendants from any liability therein; and that appellee received from Earnes & Dale large sums of money, which should have been applied in discharge of the note sued on.

The evidence in the record shows that the Jackson Fertilizer Company knew of the dissolution of the firm of Earnes, Long & Co., but there is nothing to show that they assented to said dissolution, or even knew of the conditions and terms entered into by the parties relating thereto. In consideration that Earnes & Dale would buy entirely their fertilizers from appellee, which they agreed to do, it agreed that the note here sued on should be extended a season; but no change in the

security was made. The agreement between the partners of Earnes, Long & Co., by which two of them took the assets and agreed to pay the debts of the firm, however it may have operated between themselves, did not change their relation to their creditor, the Jackson Fertilizer Company, without its assent thereto given upon a sufficient consideration. As between themselves, Earnes and Dale were, in effect, principals, and Long and Norman were sureties; but as to appellee they all were severally joint debtors and obligors, and as such were equally bound as principal obligors for the payment of the note. Story, Partn., sec. 158; Col. Partn., sec. 556; *Harris* v. *Lindsay,* 4 Wash. C. C., 98 Fed. Cas. No. 6, 123; Id., 4 Wash. C. C., 271, Fed. Cas. No. 6,124. The extension of time by appellee to Earnes & Dale for the payment of this note did not affect the liabilities of Norman and Long. The latter were joint debtors and obligors with Earnes & Dale for the payment of the note, and an extension of it was an advantage to all the parties. Notwithstanding the extension, Norman or Long were at liberty to pay the note at any time. They knew, or might have readily ascertained, whether the note was unpaid or not, and might have paid the same. The extension worked no detriment to them, but was a favor altogether. For the purpose of getting payment out of Earnes & Dale, appellee has delayed to press Norman and Long for payment, and of this the latter cannot complain, for by it they suffered no prejudice. *Bedford* v. *Deakin,* 3 E. C. L., 303; *Rawson* v. *Taylor,* 30 Ohio St., 389 (27 Am. Rep., 464); *Hardware Co.* v. *Wells,* 90 Tex., 110 (37 S. W., 411; 59 Am. St. Rep., 783).

*Affirmed.*