CREDIT INDUSTRIAL CO. *v.* ADAMS COUNTY LUMBER
& SUPPLY CO., et al.

Nov. 3, 1952

No. 38512          6 Adv. S. 1          60 So. 2d 791

*W. A. Geisenberger,* for appellant.

*L. C. Gwin,* for cross-appellants.

*W. A. Geisenberger,* in reply.

Kyle, J.

The plaintiffs, Samuel S. Salitan and David Little, partners, doing business under the firm name of Credit Industrial Company, sued the defendants, J. W. Claughton, Hudson Harrell and F. D. Flinn, doing business as partners under the firm name of Adams County Lumber and Supply Company, and also Adams County Lumber and Supply Company, a corporation, in the circuit court of Adams County in an action of debt upon three drafts, or bills of exchange, drawn by Carbozite Protective Coatings, Inc., on the Adams County Lumber and Supply Company, and accepted by the Adams County Lumber and Supply Company, and later endorsed and transferred by the Carbozite Protective Coatings, Inc., to the plaintiffs. Two of the above mentioned bills of exchange were dated January 24, 1950, and were accepted by the Adams County Lumber and Supply Company on February 7, 1950. The third bill of exchange was dated April 17,

1950, and was accepted by the Adams County Lumber and Supply Company on April 21, 1950.

The plaintiffs alleged in their declaration that the plaintiffs had purchased the first two bills of exchange from the Carbozite Protective Coatings, Inc., on February 9, 1950, and that the plaintiffs had received the third bill of exchange on May 9, 1950, in renewal of and as a substitute for a similar bill of exchange for a like amount dated January 24, 1950, which had been purchased by the plaintiffs on February 9, 1950, and which had matured on April 1, 1950; that the plaintiffs had purchased all of said bills of exchange for a valuable consideration before the dates of their maturity; and that the plaintiffs were bona fide holders of said instruments in due course and without notice of any infirmity. The plaintiffs also alleged upon information and belief that the defendant partnership, prior to the date of the filing of plaintiffs' declaration, had conveyed all of its property and assets to the Adams County Lumber and Supply Company, a corporation, and that said conveyance had been made without compliance with the Bulk Sales Statute of Mississippi; and the plaintiffs asked that a judgment be rendered in their favor against said corporation, as well as the defendant partners.

The defendant partners, J. W. Claughton and F. B. Flinn, in their answer, admitted that the above mentioned drafts had been accepted by the defendant partnership, as alleged in the plaintiffs' declaration, but the defendant partners alleged that they were not legally liable for the payment of said instruments because of the false representations made by the Carbozite Protective Coatings, Inc., in the procurement of said trades acceptances; and the defendant partners gave notice in their answer that they would offer to prove as a defense to the plaintiffs' action that said drafts were drawn on and accepted by the defendant partnership in payment of the purchase price of roofing materials purchased by the defendant partnership under the terms of a franchise agreement

entered into by and between the Carbozite Protective Coatings, Inc., and the defendant partnership on January 4, 1950, a copy of which was attached to the defendant partners' answer; that as a part of the consideration for the execution of said instruments by the defendant partnership the Carbozite Protective Coatings, Inc., promised and agreed that it would make available to the defendant partnership a trained representative to instruct the defendant partners and their employees and prospective customers in the proper use and proper method of application of the Carbozite waterproofing materials, and that the Carbozite company would sponsor and conduct an intensive national and local advertising campaign to promote the sale of Carbozite roofing materials, and that a special truck, containing all the special equipment and machinery necessary to demonstrate the proper use and method of application of Carbozite roofing materials, would be made available to the defendant partnership for such advertising purposes; and that none of the above mentioned promises had been fulfilled. And as an additional ground of defense, the defendant partners alleged that the Ohmlac Paint and Refining Company, Inc., a corporation affiliated with the Carbozite Company, which manufactured roofing materials of substantially the same texture as Carbozite roofing materials, had granted to the Feeders' Service Company, of Natchez, the exclusive right to sell Ohmlac roofing materials in the Natchez area, and that the sale of Ohmlac products in the trade territory covered by the defendants' franchise constituted a violation of the defendants' rights under the agreement entered into by and between the defendant corporation and the Carbozite Protective Coatings, Inc. The defendants alleged that the plaintiffs were well acquainted with the practice of the above mentioned corporations in granting overlapping franchises in the same territory for the sale of their respective products under different trade names, and the misrepresentations made by the Carbozite Protective Coatings,

Inc., concerning the advertising campaign and large scale demonstration program which the Carbozite Company proposed to conduct for the benefit of their retail dealers, and that the plaintiffs were not bona fide purchasers of the trade acceptances described in the plaintiffs' declaration.

The defendant Hudson Harrell filed a separate answer, and in his answer alleged as an affirmative defense on his part the special matters set forth in the answer of Claughton and Flinn, and Harrell also alleged as an additional defense to the plaintiffs' suit that he had conveyed his interest in the business and assets of the partnership to Claughton and Flinn on March 30, 1950; that Claughton and Flinn had assumed the debts and obligations of the partnership then outstanding; and that he was not liable in any manner for the payment of the drafts sued on in the plaintiffs' declaration.

The Adams County Lumber and Supply Company, a corporation, in its answer admitted that it had purchased all of the property and assets of the defendant partnership, except the waterproofing and roofing materials owned by the partnership, but averred that both the seller and the buyer had complied strictly with the requirements of the Bulk Sales Statute of Mississippi; and the corporation denied that it was liable for the payment of the drafts sued on in the plaintiffs' declaration.

The plaintiffs filed replications to the defendant partners' answers, and in their replication denied the allegations set forth in the defendants' answers, and the plaintiffs reaffirmed that they were bona fide holders of said instruments in due course for value and without notice.

The case was tried before the circuit judge without a jury. J. W. Claughton was called as an adverse witness for the plaintiffs, and testified that he executed the trade acceptances on behalf of the partnership. Claughton also testified that the trade acceptance dated April 17, 1950, was given in renewal of a similar trade acceptance dated January 24, 1950, which became due on April 1,

1950. Claughton testified that only about $300 worth of the Carbozite roofing materials had been sold, and that the balance of the roofing materials were stored in unbroken containers in a warehouse at his home. The deposition of Samuel S. Salitan, a member of the plaintiff partnership, was introduced in evidence. Salitan testified that the three drafts dated January 24, 1950, and accepted by the defendant partners on February 7, 1950, were purchased by the plaintiffs on February 9, 1950, and were paid for in full on that date; that the draft due April 1, 1950, was returned to the defendant partnership after the defendant partnership had accepted the renewal draft dated April 17, 1950. Salitan testified that at the time the trade acceptances were purchased by the plaintiffs, the plaintiffs had no notice or knowledge of any dispute between the Carbozite Protective Coatings, Inc., and the defendant partnership.

The defendants' attorney offered to prove by the witness Claughton in defense of the action the special representations and promises set forth as affirmative matter of defense in the answer filed by Claughton and Flinn. But the court sustained objections to the testimony.

At the conclusion of the testimony the court rendered a judgment in favor of the plaintiffs and against the defendants, Claughton, Harrell and Flinn, for the amounts due on the two bills of exchange dated January 24, 1950, and against the defendants, Claughton and Flinn, for the amount due on the bill of exchange dated April 17, 1950. The court held that the Adams County Lumber and Supply Company, a corporation, was not liable on any of the drafts, and that Hudson Harrell, who had retired from the partnership on March 30, 1950, was not liable on the draft dated April 17, 1950. From that judgment the plaintiffs prosecute this appeal, and the defendants, J. W. Claughton and F. D. Flinn, have filed a cross assignment of errors.

The appellants assign as error the action of the lower court in rendering judgment in favor of the defendant,

Hudson Harrell, on the bill of exchange dated April 17, 1950, which was drawn on and accepted by the partnership in renewal of a similar bill of exchange for a like amount dated January 24, 1950, and due April 1, 1950, which had been accepted by the partnership prior to the date of Harrell's retirement from the partnership. The appellee, J. W. Claughton and F. D. Flinn, in their cross assignment of errors, allege that the court erred in sustaining the objections of the appellants to the testimony offered by the appellees for the purpose of establishing their defense of misrepresentation and fraud, and that the court erred in rendering judgment in favor of the appellees, Claughton and Flinn, for the total amount due on the three trade acceptances, and that the court erred in sustaining the motion of the appellee, Hudson Harrell, for a judgment in his favor on the renewal trade acceptance dated April 17, 1950.

We shall dispose of appellees' cross assignment of errors first.

There was no error in the court's ruling on the plaintiffs' objection to the testimony offered by the defendants to prove that the Carbozite Protective Corporation, Inc., had agreed to send a trained salesman to Natchez equipped with special trucks and machinery designed to demonstrate the proper use and application of the Carbozite waterproof roofing materials, and that the Carbozite Protective Coatings, Inc., had agreed to conduct an intensive national and local sales and advertising campaign to stimulate sales of the Carbozite roofing materials. The trade acceptances sued on in the plaintiffs' declaration were issued in payment of the purchase price of 700 gallons of Carbozite waterproof roofing materials delivered to the defendant partnership under the terms of the written franchise agreement dated January 4, 1950, a copy of which the defendants attached to their answer. The purchase order for the 700 gallons of waterproof roofing materials was incorporated in the agreement. The agreement expressly provided that ''Orders are not

subject to countermand." And in the agreement it was expressly stated that "It is understood that this contract covers and includes the entire agreement between the parties and any changes binding upon the company must be incorporated in this contract. No warranty or conditions will be recognized unless specified in this contract."

Each of the drafts sued on in this case contained a provision that "the transaction which gives rise to this instrument is the purchase of goods by the acceptor from the drawer."

(Hn 1) The above mentioned promises which the defendants' attorney proposed to prove by J. W. Claughton were verbal promises to do certain acts in the future. The offer to prove such promises was in effect an offer to vary and add to the terms of the written instruments by parole testimony; and the testimony was properly rejected for that reason. Perrault v. White Sewing Machine Co., 157 Miss. 167, 127 So. 271. But the testimony was properly rejected in this case for the further reason that the gist of the defense offered by the defendant partners was fraud, and the rule is well settled that (Hn 2) "fraudulent representations upon which a party may predicate any demand for relief must relate to past or presently existing facts, as facts, and cannot consist of promises, except in some cases when a contractual promise is made with the present undisclosed intention of not performing it." McArthur v. Fillingame, 184 Miss. 869, 186 So. 828, 829.

The representations involved in the alleged promises which the defendants proposed to prove by J. W. Claughton related neither to past nor presently existing facts, and if proof of such promises had been admitted such proof would not have exonerated the defendant partners from liability on the written instruments sued on in the plaintiffs' declaration. Salitan, et al. v. Horn, et al., 212 Miss. 794, 55 So. 2d 444.

What we have said above is in line with the general rule stated in 23 Am. Jur., pp. 799, 800, Fraud and Deceit,

par. 38. "It is a general rule that fraud cannot be predicated upon statements which are promissory in their nature when made and which relate to future actions or conduct, upon the mere failure to perform a promise—nonperformance of a contractual obligation—or upon failure to fulfill an agreement to do something at a future time. . . ." The reasons for the rule, as stated by the Court in Salitan, et al. v. Horn, et al., supra, are "that **(Hn 3)** a mere promise to perform an act in the future is not, in a legal sense, a representation and that a mere failure to perform it does not change its character." 23 Am. Jur., p. 801.

**(Hn 4)** The offer of the defendants' attorney to prove that the Carbozite company had failed to furnish a trained instructor to instruct the defendants and their employees and prospective customers in the proper use and application of the Carbozite products was likewise properly rejected by the court. Paragraphs 3 and 4 of the franchise agreement provided that quart samples of the Carbozite products should be distributed by the dealer among prospective customers, and that the dealer should then furnish the company with a list of those prospects. The company agreed that after this list had been received by the company the company would send a trained salesman to assist the dealer with his prospects. But the defendant partners neither alleged in their answer nor offered to prove that they had furnished to the Carbozite Protective Coatings, Inc., a list of prospective purchasers, as provided in the above mentioned agreement, and the testimony offered by the defendants' attorney to prove that the company had failed to furnish a trained instructor for the purposes stated above was therefore properly excluded.

The court committed no error in excluding the testimony offered by the defendant partners for the purpose of proving that the Ohmlac Paint and Refining Company, a corporation affiliated with the Carbozite Protective Coatings, Inc., had negotiated a similar contract with

Feeder Service, Inc., for the sale of its products in the Natchez trade area. It is a well known fact that many nationally advertised products, which are manufactured and sold under special trade names or brands, are offered for sale by retail dealers under exclusive franchise agreements in the same trade territory as that in which other products of a similar nature, manufactured by the same or an affiliated corporation, but bearing a different trade name or brand, are offered for sale; **(Hn 5)** and proof of such facts is not sufficient to show fraud on the part of the manufacturer or the retail dealer who manufactures or sells under their proper trade name articles which are similar to other articles manufactured or sold under a different trade name by other dealers in the same trade territory.

According to the allegations of the declaration, the plaintiffs were holders in due course of the trade acceptances sued on. Section 93, Code of 1942. And, as stated by the Court in Salitan, et al. v. Horn, et al., supra, **(Hn 6)** "every holder is deemed prima facie to be a holder in due course . . .", subject to the limitation that if the negotiator's title was defective, the holder must prove that he, or his predecessor in title, acquired the title as holder in due course. Section 98, Code of 1942. No competent evidence was offered to show fraud or misrepresentation in the procurement of the trade acceptances by the Carbozite Protective Coatings, Inc., or to show that the title to the instruments acquired by the plaintiffs was defective.

There was no error in the action of the lower court in rendering judgment against Claughton, Harrell and Flinn for the full amount due on the two trade acceptances dated January 24, 1950, and in rendering judgment against Claughton and Flinn for the full amount due on the trade acceptance dated April 17, 1950.

**(Hn 7)** But we think that the court was in error in rendering judgment in favor of the defendant Harrell on the

trade acceptance dated April 17, 1950. This trade acceptance was drawn on and accepted by the partnership in renewal of a similar trade acceptance for the same amount dated January 24, 1950, and due April 1, 1950, which had been accepted by the partnership prior to the date of Harrell's retirement from the partnership. The plaintiffs had purchased the original trade acceptance on February 9, 1950, approximately six weeks before the date of its maturity. Harrell, as a member of the partnership, was liable for the payment of the trade acceptance at the time of his withdrawal from the partnership. As between him and the plaintiffs, Harrell remained liable for the payment of the trade acceptance after his withdrawal from the partnership, notwithstanding the fact that under the terms of the agreement between him and Claughton and Flinn, Claughton and Flinn had assumed liability for the payment of the partnership debts.

"It is well settled that an agreement between the withdrawing member of a partnership and the other partners or a new incoming partner to whom the withdrawing partner has sold his interest by which the former assumed payment of all partnership liabilities—that is, the liabilities of the withdrawing partner—does not relieve the latter from liability to firm creditors for debts existing at the time of his withdrawal, unless the creditors assent to such assumption of liability and agree expressly or by implication to look to the members of the new partnership for payment of such debts. The mere execution of an agreement between partners whereby one assumes the firm debts and exonerates the other is not binding on the creditors and will not relieve the retiring partner of liability for them." 40 Am. Jur., p. 278, Partnership, par. 213.

In the case of Norman, et al v. Jackson Fertilizer Co., 79 Miss. 747, 31 So. 419, the Court had under consideration the question of the continuing liability of two partners, who had retired from the firm, on a note executed by the partnership prior to the date of their retirement.

In that case Norman and Long, two of the partners, had sold their interests to Earnes and Dale, the two remaining partners, who assumed all of the liabilities of the old firm. About one year after the sale Earnes and Dale, the continuing partners, were adjudicated bankrupt, and the note mentioned above not being paid, the holder of the note sued Norman and Long for the amount due on the note. The holder of the note knew of the dissolution of the old partnership and the formation of the new partnership between the two continuing members, and acquiesced therein, and extended the time for payment of the note one year beyond its maturity. Yet the Court held that the plaintiff was entitled to recover against Norman and Long. The Court stated in its opinion that there was nothing to show that the plaintiff assented to the dissolution of the old partnership; that the effect of the agreement on the part of the continuing partners to assume the debts of the partnership was to make the continuing partners principals and the retiring partners sureties, but as to the plaintiff they were all equally bound as principal obligors for the payment of the note; and the Court held that the extension of time given to the continuing partners for the payment of the note did not affect the liabilities of the retiring partners.

"Unless the creditors of a partnership assent to the retirement of a partner and agree to look to the other partners for payment, a retiring partner remains liable to creditors of the partnership for all the existing debts of the partnership to the same extent as if he had not retired. . . . In this connection it has been held that the acceptance by a creditor of the old firm of a note or obligation from the remaining partners for his debt does not release the outgoing members of the firm, unless the note is taken in satisfaction of the debt." 40 Am. Jur., pp. 271-272, Partnership, par. 201.

There is nothing in the record in the case that we now have before us to indicate that the plaintiffs agreed at any time to release Harrell from liability for the pay-

ment of the three drafts which had been accepted by the partnership prior to Harrell's withdrawal from the firm, or to indicate that the plaintiffs at the time of their acceptance of the renewal draft dated April 17, 1950, had any knowledge of Harrell's withdrawal from the partnership. And under the authorities cited above we think that Harrell was liable to the plaintiffs, along with Claughton and Flinn, for the payment of the full amount of the draft dated April 17, 1950, and due July 15, 1950, and that the plaintiffs were entitled to a judgment against Harrell as well as Claughton and Flinn for that amount.

For the reasons stated above the judgment of the lower court rendered in favor of the plaintiffs and against the defendants Claughton, Harrell and Flinn for the full amounts due on the two drafts dated January 24, 1950, and due May 1, 1950, and June 1, 1950, respectively, is affirmed; and the judgment of the lower court rendered in favor of the plaintiffs against the defendants Claughton and Flinn, for the amount due on the draft dated April 17, 1950, and due July 15, 1950, is likewise affirmed. But the judgment of the lower court rendered in favor of the defendant Hudson Harrell, and against the plaintiffs on the draft dated April 17, 1950, and due July 15, 1950, is reversed, and judgment will be entered here in favor of the plaintiffs and against the defendant Hudson Harrell also for the amount due on that draft, with interest thereon from July 15, 1950.

Affirmed in part, reversed in part, and judgment rendered.

*McGehee, C. J.,* and *Lee, Arrington* and *Ethridge, JJ.,* concur.