In re John W. POSEY and Audrey Marie Posey, d/b/a Delta Outdoorsman, Debtor.

**Bankruptcy No. S85–20065.**

United States Bankruptcy Court, N.D. Mississippi.

Nov. 26, 1985.

W. Stephens Cox, Merkel & Cocke, Clarksdale, Miss., for John W. and Audrey Marie Posey.

William E. O'Hare, Cleveland, Miss. and Charles J. Swayze, Jr., Whittington, Brock, Swayze & Dale, Greenwood, Miss., for Grenada Bank (Bank of Shaw Branch).

## OPINION

DAVID W. HOUSTON, III, Bankruptcy Judge.

Came on for consideration the motion filed by Grenada Bank, Bank of Shaw Branch, seeking relief from the automatic

stay, as well as, the abandonment of certain real and personal property; response to said motion filed by the Debtors; all parties being represented before the Court by their respective attorneys of record; the said parties having presented oral testimony, documentary evidence, as well as, memoranda of law; and the Court having heard and considered same, finds as follows, to-wit:

## I.

The Court has jurisdiction of the subject matter of and the parties to this proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157. This is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(G).

## II.

By virtue of a previous Order, dated August 28, 1985, entered by the agreement of all parties to this proceeding, the Court permitted Grenada Bank, Bank of Shaw Branch, hereinafter referred to as Grenada Bank, to sell the personal property, owned by the Debtors, which was a part of the subject matter of the motion seeking relief from the automatic stay and abandonment, a copy of said Order being incorporated herein by reference. The proceeds of said sale were deposited in an interest bearing account under the control of the Trustee appointed in this case. This personal property consisted of the Debtors' inventory, chattel paper, accounts, a 1975 KW Truck, Model T10, Serial No. 229415, and a 1978 Wilson Hopper Bottom Trailer, Serial No. 2X5334. As such, the motion of Grenada Bank and this Opinion now only applies to the Debtors' homestead which is described as follows:

That part of the Southeast Quarter of the Southwest Quarter of Section Seventeen, Township 22 North, Range 5 West, described as beginning at a point on the North right of way line of Old State Highway No. 8, which point is 3518 feet West of and 44 feet North of the Southeast corner of said Section 17, thence West along the said North right of way line of Old State Highway No. 8 for 100 feet, thence North for 179.3 feet to a point on the South right of way line of New State Highway No. 8, thence in a southeasterly direction along the said South right of way line of New State Highway No. 8 for 103.5 feet, thence South for 151.4 feet to the point of beginning; being the same property conveyed to Mrs. Irene Sostes by deed recorded in Book M–42, page 72 of the public records of Bolivar County, Mississippi.

Also that part of the Southeast Quarter of Southwest Quarter of Section 17, Township 22 North, Range 5 West, described as beginning at a point on the North right of way line of Old State Highway No. 8, which point is 3418 feet West of and 44 feet North of Southeast corner of said Section 17; thence West along the North right of way line of Old State Highway No. 8 for 100 feet; thence North for 151.4 feet to a point on the South right of way line of New State Highway No. 8; thence in a southeasterly direction along the South right of way line of New State Highway No. 8 for 103 feet; thence South for 122 feet to the point of beginning; being the same property conveyed to Mrs. Irene Sostes by deed recorded in Book M–82, page 415 of the public records aforesaid.

The proceeds from the sale of the personal property are being held in the interest bearing account for future disbursement after the resolution of the Debtors' pending lawsuit against Grenada Bank for breach of contract, misrepresentation, etc.

## III.

Since this is a Chapter 7 liquidation bankruptcy, there is no need to consider whether or not the above described real property is needed for the Debtors' reorganization. Other than for purposes of rendering an accounting to the Trustee or the Debtors, as the case may be, depending on the exempt status of the property, the Debtors' equity position in said property has only limited importance in resolving this dispute. The thrust of this proceeding centers on the validity of the deed of trust held by

Grenada Bank, discussed more fully herein-below.

## IV.

The Debtor, John W. Posey, and his business partner-stepson, Daniel R. Watkins, (see companion bankruptcy case styled *In Re: Daniel Russell Watkins, d/b/a Delta Outdoorsman,* Case No. S85–20104), entered into several loan transactions with Grenada Bank, dealing primarily with the bank's vice president at its Shaw branch, Glenn Sandroni. The initial arrangements called for the bank to make interim financing loans to the Debtors so that they could acquire inventory, furniture, and fixtures in order to commence their sporting goods business. Permanent financing was to be obtained through a direct loan to be negotiated with the United States Small Business Administration, hereinafter referred to as SBA. Between January 12, 1984, and June 13, 1984, the Debtors entered into eleven transactions with Grenada Bank, accumulating a principal indebtedness of $144,-000.00. Although Sandroni indicated during his testimony that this principal amount was in the neighborhood of $133,000.00, and that two renewal notes had been executed, the Court has reviewed the Debtors' Exhibit 1 and the Bank's Exhibit 4, both of which indicate that the principal sum was in fact $144,000.00. Effective December 4, 1984, interest had accrued on the various loans in the sum of $13,473.49. On December 4, 1984, the principal amount of the eleven notes and the aforementioned accrued interest were consolidated into one note in the sum of $157,473.49, payable on March 4, 1985. The amount of this note is substantiated, as set forth hereinabove, through Bank's Exhibit 4, the posting journal. The note was secured by a deed of trust encumbering the Debtors' homestead (see Bank's Exhibit 2), as well as, a Uniform Commercial Code Financing Statement, encumbering the business inventory, accounts, and other personal property (see Bank's Exhibit 3). As discussed more fully hereinbelow, the Debtors' execution of the deed of trust is the focal issue in this dispute.

In May, 1984, Sandroni was admonished by his superior at the bank, Louis Vause, not to extend additional loans to the Debtors. Yet, for reasons unknown to this Court, Sandroni permitted the Debtors to sign five additional notes in the total principal sum of $55,170.00, which were not placed in the bank's note portfolio. Sandroni testified that he held these notes in his desk and considered them to be personal loans from him to the Debtors. However, Sandroni actually created fictitious loans in the names of his relatives and/or friends on the bank records, while at the same time, he credited the Debtors' account with bank funds in corresponding amounts to the notes. These transactions which are absolutely in violation of banking regulations, as well as, state and federal law, are identified as follows:

| Note Date | Maturity Date | Amount |
|---|---|---|
| 5/24/84 | 11/24/84 | $ 5,000.00 |
| 6/15/84 | 9/15/84 | 9,100.00 |
| 6/21/84 | 11/17/84 | 8,000.00 |
| 8/27/84 | 11/27/84 | 10,000.00 |
| 1/11/85 | 5/1/85 | 23,070.00 |
| | TOTAL | $55,170.00 |

Although these unorthodox or illegal transactions undertaken by Sandroni are significant in the overall context of this proceeding, the validity of the deed of trust encumbering the Debtors' homestead does not rest entirely on the manner in which these five transactions were handled by Sandroni. The Court notes, however, that the Debtors were, in fact, the beneficiaries of Sandroni's conduct at the bank's expense with the infusion of the $55,170.00, into their business.

As mentioned briefly hereinabove, the original intention of the Debtors and Sandroni was to obtain permanent financing, paying off the interim transactions with the bank, through SBA. An application for a direct loan from SBA in the sum of $115,000.00, was originally submitted on behalf of the Debtors on February 17, 1984. This application was first rejected on April 2, 1984, but efforts were undertaken by the Debtors' accountant to overcome the reasons for the rejection. SBA

rejected the application for the second time on August 20, 1984. During this time frame, Ralph Hall, loan specialist with SBA, informed Sandroni that SBA's participation in a guaranteed loan from the bank to the Debtors was highly unlikely. Regardless, on December 19, 1984, an application for a 90% SBA guaranteed loan was forwarded to SBA by Sandroni. This application was rejected by SBA on January 4, 1985, and Sandroni was informed accordingly.

## V.

As a defense to the motion seeking relief from the automatic stay, the Debtors contend that Sandroni fraudulently induced them to execute the deed of trust through verbal statements that the deed of trust was to be utilized only in connection with the SBA guaranteed loan, and that if this loan was not approved that the deed of trust would be destroyed. Sandroni's position was that the deed of trust was taken as additional collateral to secure the interest that had accrued on the several interim financing transactions.

At this point, the Court notes that the deed of trust to Grenada Bank is subordinate to a primary deed of trust encumbering the Debtors' homestead held by Irene Sostes, having a balance owed of approximately $48,000.00 (see Debtors' Schedule A–2). The Debtors have valued their residence in the sum of $97,000.00, (see Debtors' Exhibit 1 and Schedule A–2); however, the Court is concerned about this value in light of the following testimony, extracted from the deposition of Ralph Hall, the SBA loan specialist, to-wit:

Q   Did you question the appraisal of the house?

A   Yes, there was a problem with the appraisal on the house.

Q   Who submitted that appraisal or who made that appraisal?

A   Robert E. Prayton, P–R–A–Y–T–O–N, made the appraisal and valued it at $46,000.00. And I simply made a comment that it was valued at 58 on his June 12 statement, and 50 on his February 17 statement. And actually, the value was 46—and let me check the date on that. It is not dated.

Q   The problem you had with it was not the appraisal itself, but just that it was much lower than the one submitted by the applicant.

A   Right.

If the Prayton appraisal is accurate, this entire proceeding has very little significance in view of the amount of the indebtedness secured by the Sostes deed of trust. If the Debtors' appraisal is accurate, however, there would be significant value in this property to satisfy some part of the bank's claim. The evidence presently before the Court is insufficient to resolve this apparent discrepancy if, in fact, the Hall testimony relates to the Debtors' homestead and not some other parcel of real property.

When the Debtors initially attempted to introduce testimony to the effect that Sandroni had advised them that the deed of trust was to be utilized only in connection with the SBA guaranteed loan, and that if said loan were not approved that the deed of trust would be destroyed, counsel for the bank objected on the grounds that such testimony was in violation of the parole evidence rule. Counsel for the Debtors correctly countered by saying that verbal representations, which could be construed as fraudulent, are exceptions to the parole evidence rule. See *Brown v. Ohman,* 42 So.2d 209 (Miss.—1949). Grenada Bank responded by stating that even if the representations alleged to have been made by Sandroni were true, that by definition these representations would not amount to fraud. In support of its position the bank offered the following comments, to-wit:

".... fraudulent representations upon which a party may predicate any demand for relief must relate to past or presently existing facts, as facts, and cannot consists (sic) of promises, except in some cases when a contractual promise is made with the present undisclosed intention of not performing it...."

"..... It is the general rule that fraud cannot be predicated upon statements which are promissory in their nature when made and which relate to future actions or conduct, upon the mere failure to perform a promise—non-performance of a contractual obligation—or upon failure to fulfill an agreement to do something at a future time...... 'mere promise to perform an act in the future is not, in a legal sense, a representation, and that a mere failure to perform it does not change its character'...."

*Credit Industrial Co. v. Adams County Lumber and Supply Co.*, 215 Miss. 282, 60 So.2d 790 at page 794 (1952).

The bank also cited 37 AmJur 2d, Fraud and Deceit, § 60 at page 92, 93, § 61 at page 94, 95; *Perrault v. White Sewing Machine Co.*, 157 Miss. 167, 127 So. 271 (1930), *McArthur v. Fillingame*, 184 Miss. 869, 186 So. 828 (1939); *Salitan v. Horn*, 212 Miss. 794, 55 So.2d 444 (1951); and *House v. Holloway*, 258 So.2d 251 (Miss. 1972).

Initially, the Court excluded the testimony of the Debtors regarding the statements made by Sandroni under the theory that these representations were promissory in nature and there was no evidence of the present undisclosed intention of Sandroni not to fulfill his promises. The Court did permit the Debtors to make an offer of proof. Subsequently, the Court was made aware of a tape recorded telephone conversation between Sandroni and Mrs. Posey. The recording was made by Mrs. Posey without the knowledge or consent of Sandroni. The hearing was reopened so that this conversation might be presented to the Court. Neither side objected to this additional evidence being received. After hearing the taped telephone conversation, the Court announced to the parties that it would reverse its prior evidentiary ruling and would consider the testimony of Mr. and Mrs. Posey as it related to the alleged representations made by Sandroni.

No one in this case disputes the premise that the burden of proof rests with the Debtors to establish by clear and convincing evidence that they were fraudulently induced by Sandroni to execute the deed of trust encumbering their homestead. Although the Debtors testified that they understood the significance of the execution of a deed of trust, they both indicated that they were lead to believe that the deed of trust would be utilized only in connection with the SBA loan. Mrs. Posey went further in her testimony stating that she was advised by Sandroni that the deed of trust would be "torn up" if the SBA loan were not consummated. Sandroni has consistently denied these representations, and as such, Grenada Bank continues to rely on the validity of the deed of trust which, as contemplated by its terms and provisions, was recorded in the county's official land records on December 10, 1984.

■ The resolution of this proceeding depends on whether Sandroni's alleged representations, *if made*, would constitute fraud of a sufficient magnitude to void the deed of trust. Although certain comments made in the taped telephone conversation prompted this Court to reverse its earlier evidentiary ruling and consider the testimony of the Debtors, this telephone conversation is not dispositive of whether or not fraud has been proved by the Debtors. The Court finds that even if these representations were made that, standing alone, they are promissory in nature and relate to future action or conduct. There is no evidence before the Court that the alleged representations were made with the undisclosed intention, at the time they were made, that they would not be performed subsequently.

■ The deed of trust was executed at the time that the past due interim financing loans were consolidated and when the accrued interest was added to the various principal amounts. This occurred several months after the direct loan application had been rejected by SBA, a fact known to all parties, and approximately two weeks before the guaranteed loan application was received by SBA. The quantum of the evidence presented will not permit the Debtors in this case to void the deed of trust, especially in view of the significant

benefit they have received to the detriment of the bank from the "Sandroni personal loans". As set forth hereinabove, to establish fraud, the evidence must be clear and convincing. In this case, *concerning the critical question,* there is merely the uncorroborated testimony of the Debtors to be weighed against the testimony of Sandroni. This Court will not set an extremely dangerous precedent by voiding a recorded deed of trust, valid in all other respects, solely on the basis of this proof.

Consequently, the motion seeking relief from the automatic stay as it applies to the above described real property, encumbered by the Grenada Bank deed of trust, is well taken and is hereby sustained. An Order will be entered consistent with this Opinion.