556 So.2d 1033 (1990)
Paul W. McMullan and Mary George W. McMullan
v.
GEOSOUTHERN ENERGY Corporation, Nrg Exploration, Inc., George Bishop, Stanley King and Uree Garner.
No. 07-58625.
Supreme Court of Mississippi.
January 17, 1990.
Rehearing Denied March 7, 1990.
*1034 Michael S. Allred, S. Craig Panter, Satterfield & Allred, Jackson, for appellants.
Ross F. Bass, Jr., Susan O. Manderson, Phelps, Dunbar, Marks, Claverie & Sims, Jackson, for appellees.
Before HAWKINS, P.J., and ANDERSON and BLASS, JJ.
HAWKINS, Presiding Justice, for the Court:
Paul W. and Mary George W. McMullan (McMullans) appeal from a summary judgment of the chancery court of the first judicial district of Hinds County granted the defendants Geosouthern Energy Corporation, NRG Exploration, Inc., Stanley King, George Bishop and Uree Garner, dismissing the McMullans' complaint to cancel a release theretofore given the defendants because of an alleged misrepresentation in inducing the release. Finding a material issue of fact and its legal effect (if any), remain murky, we reverse.
Because this case is before us upon a summary judgment dismissal we restrict ourselves to the allegations of the complaint, and to the affidavits of the former attorneys for the parties, and of Paul McMullan. We make no determination of the facts when the case is heard on the merits.

FACTS
The McMullans are residents of Forrest County. The defendants Geosouthern Energy and NRG Exploration are Texas corporations with the same address, the defendants King and Bishop are residents of Texas, all of whom are domiciled in "The Woodlands, Texas 77380." Only the defendant Garner is a Mississippian, who resides in Smith County.
The McMullans and 40 other plaintiffs in 1985 filed an action against the defendants in the United States district court for the Southern District of Mississippi for securities violations, resulting in a final judgment on August 30, 1985, against the defendants for $2,592,256.79. The McMullans were awarded $436,822.25 of this judgment.
In September, 1985, the parties agreed that the judgment could be paid in three approximately equal installments, namely: October, 1985; February, 1986; and May 1986, at ten percent interest.
On October 25, 1985, the first installment was made, from which the McMullans received $154,607.41.
The defendants defaulted on the February, 1986, installment, following which the parties began negotiating as to the remaining balance. In the litigation and settlement negotiations, the plaintiffs were represented by C. Mike Pumphrey and Jack W. Brand of the Jackson law firm Gerald, Brand, Watters, Cox and Hemleben, and the defendants were represented by Lee Davis Thames and Stephen W. Rosenblatt of the Jackson law firm Butler, Snow, O'Mara, Stevens & Cannada. No agreement was reached, and writs of garnishment were served upon several businesses, one of which was the Bank of Raleigh in Raleigh, Mississippi.
In May, 1986, the attorneys negotiated a settlement whereby the defendants would pay approximately eighty-two percent (82%) of the final judgment and accrued interest to all plaintiffs for which releases would be executed.
This offer of compromise apparently suited all of the plaintiffs and judgment creditors with the exception of Thomas W. Colbert of Forest. Colbert would not accept the offer of settlement and relieved Pumphrey and Brand from any further representation of him. On May 6 by memorandum, he confirmed that he had relieved them of any further legal representation as of May 2.
When the McMullans were advised that Colbert had balked, they were still willing to settle their judgment claim, but only upon the condition that Colbert received no more than they. Pumphrey was assured by Thames that the defendants had no intention *1035 to voluntarily pay Colbert any more than the other plaintiffs.
Paragraphs 25-28 of the McMullans chancery court complaint filed April 28, 1987, reads:
25. The McMullans agreed to accept Defendants' settlement offer only upon the condition that, if Defendants voluntarily paid Colbert more of his share of the Final Judgment, then Defendants would also pay the additional sum proportionally to the McMullans.
26. Brand and Pumphrey informed Thames during a telephone conversation of the McMullans' conditions. Thames stated that Defendants had no intention of voluntarily paying Colbert a higher percentage of his judgment than the percentage paid to the McMullans and the other plaintiffs. However, to secure the McMullans' agreement to the settlement offer, Thames agreed that Defendants would pay the McMullans a higher percentage of their judgment if Defendants so paid Colbert.
27. In reliance upon these representations, on May 7, 1986, the McMullans executed releases to Defendants whereby the McMullans received $268,395.00, such sum being approximately 82% of their share of the Final Judgment and accrued interest owing to them as of that date.
28. As a result of the settlement with the McMullans and other plaintiffs except Colbert, Defendants reduced their liability on the remaining balance of the Final Judgment by approximately $315,000.00.
Following this the plaintiffs, including the McMullans, each executed unconditional releases to the defendants. The McMullans' "General and Absolute Release," executed May 12, 1986, makes no mention of the agreement that in the event Colbert were paid in greater sum they would be paid proportionately. Had the McMullans been paid the full amount of the remaining amount due upon their judgment claim, they would have received an additional sum of approximately $54,263.65.
Colbert pursued the writs of garnishment. The Bank of Raleigh claimed a set-off against the defendants for sums due it and, according to the McMullans, the defendants voluntarily deposited enough money in the bank to satisfy both the bank's and Colbert's judgment claim.
McMullans' attorneys then made demand upon the defendants' attorneys to pay the McMullans the full sum of their judgment claim, which was refused, and the complaint in this cause filed. The parties' attorneys withdrew as counsel, and the McMullans and defendants were represented by other attorneys in this action.
Interrogatories were propounded with the complaint, which were objected to by the defendants and only partially answered. The defendants filed a motion for summary judgment, supported by affidavits from Thames and Rosenblatt. Pumphrey and McMullan filed counter-affidavits. McMullan by affidavit alleged that he would never have settled his claim without the assurance that in the event Colbert was paid a greater percentage of his judgment claim than he, then he would be treated the same as Colbert. Pumphrey alleged by affidavit that he had this verbal agreement with Thames, that in the event Colbert was paid his judgment claim in full that the McMullans would be paid their judgment claim in full as well.
Thames and Rosenblatt by affidavit only conceded that when they were discussing a compromise settlement with Pumphrey, and during which the fact that Colbert's claim was not being settled arose. Pumphrey then informed Thames that the McMullans were willing to settle, but if Colbert was paid more than they, they wanted to be treated the same. According to Thames, Pumphrey was then told that the defendants had no intention of voluntarily paying Colbert any greater percentage of his judgment claim than was being paid the remaining judgment creditors.
The chancellor granted summary judgment, finding first that the release was general and absolute with the McMullans' judgment claim encompassed therein, and had to be enforced as written, citing Smith *1036 v. First Federal Savings & Loan Ass'n of Grenada, 460 So.2d 786 (Miss. 1984). He then held that the proof of any collateral oral agreement was insufficient as a matter of law to establish an agreement in this case, citing Freeman v. Continental Gin Co., 381 F.2d 459 (5th Cir.1967), and Valley Mills v. Southeastern Hatcheries of Mississippi, Inc., 245 Miss. 71, 145 So.2d 698 (1962). He then found that the McMullans' affidavits failed to establish the existence of a genuine factual issue under their claims of fraud and misrepresentation as required by Rule 56(d) of the Mississippi Rules of Civil Procedure (MRCP).

LAW
Summary judgments are quite useful and encouraged by this Court in the appropriate cases. We do deferentially suggest, especially in chancery court actions, great care and caution in granting them when a hearing on the merits can in all likelihood be heard as expeditiously as the time consumed in applying for, resisting and ruling upon a motion for summary judgment. Had this case come to us upon a final decree rendered following a hearing on the merits, it is unlikely that it would have presented any problem. In the posture of a summary judgment, however, we must give the plaintiffs the benefit of the doubt on the allegations of their complaint and affidavits. Even if we were to affirm this case on appeal, the summary judgment "short cut" would still prove to be the longest route.
We have no difficulty in finding there was a material issue of fact, albeit tenuous, on whether there was in fact an agreement between the attorneys for these parties that in the event Colbert was paid the full amount of his judgment claim then the McMullans would likewise be paid the full amount of theirs. What a chancellor would decide after a factual hearing on the merits we can make no prediction. The McMullans claim a representation was made to their attorneys by defendants' attorneys upon which they relied, and because of it they executed the release.
We must hold the chancellor erred in his finding that there was insufficient proof of a collateral agreement and the affidavits failed to establish the existence of a material fact.
The troublesome part, of course, is whether such agreement  if it in fact was made  rendered what upon its face was an unconditional and absolute release not quite so. Two features of this alleged representation are apparent: (1) it dealt with future conduct which might develop one way or another. It was of course unknown what Colbert's eventual position would be as to his judgment claim. And (2), whatever the defendants paid Colbert in and of itself had no financial bearing on the McMullans.
The chancellor found that the release was absolute and unconditional and had to be enforced as executed.
The defendant appellees in their brief attack the McMullans' claim primarily upon the pleadings, claiming that the allegations of fraud fail to satisfy the specificity requirements of Rule 9(b), and fail to meet the clear and convincing standard of proof required in claims based upon fraud. We do not find their brief particularly helpful, although they do cite authority that in order to sustain a fraud claim, the plaintiff must prove, inter alia, injury to himself. Franklin v. Lovitt Equipment Co., 420 So.2d 1370, 1373 (Miss. 1982).
As to the pleadings, Justice Anderson for this Court recently stated in Mississippi State Tax v. 3300 Corp., 515 So.2d 912, 915 (Miss. 1987), on an affirmative defense based upon failure to allege fraud in the pleading:
[T]his was a motion for summary judgment and in such a motion the pleadings are reduced in importance. Indeed, one of the most important things about a summary judgment is that it enables the court to pierce the pleadings and determine whether there are truly any genuine issues of material fact to be litigated.
* * * * * *
In short, in the context of a motion for summary judgment, imperfections in the pleadings are not decisive.
*1037 Also, Crystal Springs Insurance Agency v. Commercial Union Company, 554 So.2d 884 (Miss. 1989).
And, the clear and convincing standard required of the evidence to sustain a claim of fraud is certainly met in a summary judgment posture when one witness specifically claims a representation was in fact made.

REPRESENTATION OF FUTURE EVENT
What about the first nettlesome question, the representation of the defendants' attorneys pertained to what would transpire in the future, and not to any present or past fact?
In Credit Industrial Co. v. Adams County Lumber & Supply Co., 215 Miss. 282, 290, 60 So.2d 790, 794 (1952), quoting from the previous decision of McArthur v. Fillingame, 184 Miss. 869, 876, 186 So. 828, 829 (1939), this Court held:
[F]raudulent representations upon which a party may predicate any demand for relief must relate to past or presently existing facts, as facts, and cannot consist of promises, except in some cases when a contractual promise is made with the present undisclosed intention of not performing it.
Also, Pearce v. Pierce, 214 Miss. 344, 347, 58 So.2d 824, 825 (1952), holding that to set aside a release for misrepresentation or fraud it must be alleged and proved the fraud was "as to past or existing facts." Also, 38 Am.Jur.2d Fraud and Deceit, §§ 60-65; 37 C.J.S. Fraud, §§ 11-12.

INJURY?
It is clearly the law that a misrepresentation which neither does a plaintiff any harm nor causes a loss is not actionable. Monsanto Co. v. Cochran, 254 Miss. 399, 180 So.2d 624 (1965); Rhyne v. Gammil, 215 Miss. 68, 60 So.2d 500 (1952). Also, generally: 37 Am.Jur.2d Fraud and Deceit, § 283; 37 C.J.S. Fraud, § 41. But whether the McMullans suffered an actionable injury, just as predication of fraud upon promises are questions we feel no inclination to address on our own, counsel having not seen fit to enlighten us on either of these matters. The chancellor considered neither.
We likewise deem it premature to answer at this stage the question of whether the alleged agreement violated the general parol evidence rule that such evidence is inadmissible to vary or alter the terms of a clear and unambiguous written instrument. Great Atlantic & Pacific Tea Co. v. Lackey, 397 So.2d 1100 (Miss. 1981).
In sum, we find there is a factual issue to be determined by the chancery court as to whether Thames made the representation to Pumphrey he is charged to have made, and even if it were made, its legal effect remains clouded because it was never addressed by the chancellor. We therefore reverse and remand for a hearing on the merits.
REVERSED AND REMANDED.
DAN M. LEE, P.J., and PRATHER, ROBERTSON, ANDERSON and BLASS, JJ., concur.
ROY NOBLE LEE, C.J., and SULLIVAN and PITTMAN, JJ., not participating.